THEODORE REGIER ET AL., APPELLEES, v. NEBRASKA PUBLIC POWER DISTRICT, A PUBLIC CORPORATION AND POLITICAL SUBDIVISION OF THE STATE OF NEBRASKA, APPELLANT.

199 N. W. 2d 742

Filed August 4, 1972. Nos. 38365, 38366.

Wilson, Barlow & Watson and Ted L. Schafer, for appellant.

Christensen & Glynn, Lawrence C. Sandberg, Jr., and E. H. Powell, for appellees.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON JJ.

BOSLAUGH, J.

These are appeals in proceedings in eminent domain. They were consolidated for trial in the district court and for briefing and argument in this court.

The plaintiffs, Theodore Regier and Marjorie Regier, own and farm approximately 626 acres of land south and east of Aurora, Nebraska. In 1969, the defendant condemned easements across the plaintiffs' property for the construction of a transmission line.

The appraisers appointed by the county judge fixed the damages at $29,500. The defendant appealed to the district court where the jury returned a verdict in the amount of $62,600. The defendant appeals.

The plaintiffs' land consists of the southwest quarter of Section 22, the northeast quarter of Section 27, and the west half of Section 26, all in Township 10 North, Range 6 West of the 6th P.M., in Hamilton County, Nebraska. The land is fertile, level, irrigated land. It is well developed and improved for agricultural use. Its value before the taking was between $559,800 and $681,260.

The defendant, in its declarations of taking, divided the plaintiffs' land into separate tracts. The petitions filed in the county court described Tract No. H-29 as the NE ¼ SW ¼, and the NW ¼ of 26-10-6. Tract No. H-30 was described as the NE ¼ of 27-10-6. Separate awards were made by the appraisers and separate appeals were taken by the defendant to the district

court. In the district court the cases were consolidated for trial with the separate tracts considered as separate causes of action. Separate verdicts were returned on each cause of action and separate appeals taken to this court. The defendant now contends that the judgments should be reversed and the causes remanded for a new trial because the plaintiffs' land was not considered as a single unit in the district court.

All of the land involved in these cases is owned by the plaintiffs, is contiguous, and is devoted to the same use. It should have been considered as one unit or parcel for the purpose of ascertaining the damages resulting from the taking of the easements. See Verzani v. State, 188 Neb. 162, 195 N. W. 2d 762. The assignments of error, however, cannot be sustained for several reasons.

The error resulted from the defendant's election to divide the plaintiffs' land into separate tracts in the declarations of taking. A party cannot be heard to complain of an error which he was instrumental in bringing about. Beveridge v. State, 183 Neb. 406, 160 N. W. 2d 229. The defendant had the benefit of separate appraisals which would have permitted a single appeal if it had been satisfied with one of the awards. It cannot now complain of the theory which it adopted in the petitions filed in the county court. Furthermore, the record shows there was no prejudice to the defendant. Error without prejudice is not ground for reversal.

The defendant filed motions for a change of venue which were overruled by the district court. The ruling on these motions is assigned as error. The motions alleged, in substance, that a fair and impartial trial could not be had in Hamilton County because bias, prejudice, bitterness, and hostility against the defendant would make it impossible to select fair and impartial jurors. Affidavits offered in support of the motions referred to a number of newspaper articles which were

critical of the defendant and the routing of the transmission line.

The defendant did not examine any of the prospective jurors in regard to the newspaper articles, and the voir dire examination of the jury panel did not show that a fair and impartial jury could not be obtained. No challenge for cause by the defendant was overruled, and at the close of the examination of the jury panel, it was passed for cause by the defendant. Under these circumstances, it is unnecessary to consider further the showing made in support of and in resistance to the motions. A party who fails to challenge the jurors for disqualification and passes the jurors for cause waives any objection to their selection. State v. Eggers, 175 Neb. 79, 120 N. W. 2d 541; State v. Harris, 184 Neb. 301, 167 N. W. 2d 386.

The defendant contends that the verdicts were excessive. This is the principal issue presented by the appeals.

The verdicts in these cases included both permanent and temporary damages caused by the taking of the easements. The taking occurred on May 28, 1969. Construction of the transmission line began in April 1970. The defendant's contractor moved heavy equipment onto the land causing compaction and disturbance of the soil in the easement area. There was also a problem with trash left by the contractor which interfered with farming operations. The plaintiffs estimated the temporary damages at $10,000. A witness for the defendant estimated the temporary damages at $3,000. Since the verdicts were general, the amount allowed by the jury for temporary damages cannot be determined.

The easements taken are 150 feet wide and cross the plaintiffs' property on a diagonal line from northwest to southeast. The combined area of the easements is approximately 19 acres. The centerline of the easement area across Section 27 intersects the west boundary of the northeast quarter 1,060 feet south of the north line

of the section. The centerline intersects the line be-
tween Sections 27 and 26, 703 feet north of the half-
section line. The centerline intersects the east boundary
of the west half of Section 26, 168 feet south of the
half-section line. No part of the southwest quarter of
Section 22 is included in the easement area.

The trial court considered the west half of Section
26 to be the area affected by easement across Tract H-29,
and the northeast quarter of Section 27 and the south-
west quarter of Section 22 to be the area affected by the
easement across Tract H-30. It was a question of fact
as to whether there was remainder damage to the south-
west quarter of Section 22 and that part of the south-
west quarter of Section 26 omitted from the description
of Tract H-29 in the petitions filed in the county court.
The evidence was in conflict and the question was for
the jury.

The plaintiffs' land is irrigated from 6 wells and 3
reuse pits. One of the wells on Tract H-30 is located
within the easement area. Since the date of the tak-
ing, the plaintiffs have drilled an additional well near
the center of the southwest quarter of Section 26 and
have installed a center pivot irrigation system there.
Much of the evidence relates to center pivot irrigation
systems, their desirability and efficiency; whether the
land was adaptable to irrigation by center pivot sys-
tems; and the effect the easements had upon the market
value of the land because parts of it now cannot be
irrigated by center pivot systems. The evidence was
in conflict and presented questions for the jury.

The transmission line presently constructed across
the plaintiffs' land is a 345,000 volt line with 6 conduc-
tors and 2 shield wires. There are 7 "K" frame, 2-pole
structures on the land which are 750 to 900 feet apart.
The poles of each structure are spaced 26 feet apart.
There are no guy wires or down-guys on the structures
at this time but the evidence shows some of the struc-
tures are no longer perpendicular.

The evidence established that the structures now erected on the easement area interfere with farming the land and require much additional time and labor to perform the necessary operations on the land. The plaintiff uses 8-row machinery and it is impossible to farm through the structures with this equipment. Much hand labor with shovels is required to open the furrows through the structures so that gravity irrigation may continue beyond the easement area. Weed control in the areas around the structures is difficult, and aerial spraying will be more difficult.

The plaintiffs' evidence fixed the permanent damages resulting from the taking at between $62,000 and $71,000. The defendant's evidence fixed the permanent damages at between $9,500 and $11,000. It is apparent that the jury rejected the testimony of the defendant's witnesses as unrealistic.

In determining whether the verdict was excessive it is important to consider the exact nature of the easements which were taken. The easements permit the "survey, construction, operation, maintenance, inspection, repair, removal, alteration, relocation and reconstruction of Condemner's electric transmission lines including necessary poles, towers, footings, guys, down-guys, anchors, conductors, shield wires and all other equipment used in connection therewith, together with all rights and privileges incident to the use and enjoyment thereof" on the property, including rights of ingress and egress within the easement area. The plaintiffs may cultivate and use the land within the easement area if the use does not endanger or interfere with the defendant's use of the area. The plaintiffs may not place or allow any "combustible trash or property, buildings, structures, hay or straw stacks" to remain within the easement area. The plaintiffs' right to future damage to fencing or crops is reserved in accordance with section 76-710, R. R. S. 1943.

The defendant suggests that damages should be de-

termined on the basis of the present structures on the land because it appears unlikely that additional lines or structures will be placed on the easement area. The easements taken are permanent and the plaintiffs have no assurance as to what future use may be made of the easement area. The addition of guy wires and downguys to the present structures would materially increase the inconvenience and hazard to the plaintiffs, particularly when lighting conditions are poor. It is possible that future developments will result in relocation and reconstruction of transmission lines within the easement area so that plaintiffs will be denied any substantial use of the area, and the structures will prevent farming through the area. These are matters which the jury considered and which we must consider in determining whether the verdicts were excessive.

In Johnson v. Nebraska Public Power Dist., 187 Neb. 421, 191 N. W. 2d 594, a similar case involving an easement for the same transmission line in an adjoining county, we said: "The 150-foot diagonal easement with the present seven 2-pole structures running diagonally for over a mile across the farm is obviously a substantial factor affecting market value. The record supports, almost conclusively, that operation of the present irrigation systems will be materially inconvenienced and impeded in operation. With larger modern machinery and power units, aerial spraying of fertilizer, nutrients, and insecticides, and the large scale movement of tubing and irrigation equipment, the diagonal easement will realistically impair normal ground operations on the farm. Beyond this, the record strongly supports a conclusion that it cannot now be adapted to the use of an irrigation system (center-pivot) substantially increasing productivity. These are but a few of the factors in evidence before us for review."

The plaintiffs have a well-developed, highly improved farm. It produced approximately 65,000 bushels of corn and a gross farm income of over $100,000 in 1969.

There is grain storage capacity of 210,000 bushels on the property and dryer capacity of 65,000 bushels. The buildings are valued at $60,000 to $100,000. As in the Johnson case, *supra,* it is obvious the easements have a substantial adverse effect upon the market value of the plaintiffs' property. The record does not show that the verdicts were excessive.

The last assignment of error relates to a ruling of the trial court upon a motion for mistrial made by the defendant. Donald W. McDannel, a value witness for the defendant, stated during cross-examination that he had been authorized by the defendant to negotiate with landowners if they brought up the subject. The witness was then asked when he had first contacted Mr. Regier and if that was the time the witness had "attempted to negotiate with him for twelve hundred and fifty dollars a pole setting." The witness answered: "I don't remember." The defendant moved for a mistrial but the motion was overruled and the jury instructed to disregard the question and answer.

The defendant contends that the ruling was reversible error and that the trial court should have declared a mistrial. The defendant relies upon the rule that ordinarily offers to compromise and negotiations for settlement are not admissible. See Bishop Cafeteria Co. v. Ford, 177 Neb. 600, 129 N. W. 2d 581. Here there was no issue as to liability. The sole issue was damages and the witness had already testified that the damages were a larger sum. Under the facts and circumstances in these cases the ruling of the trial court was not an abuse of discretion.

The judgments of the district court are affirmed.

AFFIRMED.