STATE OF NEBRASKA, APPELLEE, V. LEWIS MYERS, APPELLANT.
STATE OF NEBRASKA, APPELLEE. V. JIM BRODRICK, APPELLANT.

209 N. W. 2d 345

Filed July 6, 1973. Nos. 38797, 38796.

Charles A. Fisher, for appellants.

Clarence A. H. Meyer, Attorney General, Chauncey C. Sheldon, and Bernard L. Packett, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

McCown, J.

The defendants in these two cases, Lewis Myers and Jim Brodrick, after separate jury trials, were found guilty of unlawful delivery and distribution of a controlled substance, and sentenced to terms of imprisonment. Each defendant appealed and the cases have been consolidated on appeal in this court. Both appeals involve the procedure of impaneling multiple juries at one time from a single jury panel for the subsequent trial of criminal cases which may be interrelated.

On May 30, 1972, in the District Court for Dawes County, four juries were impaneled for the trial of four criminal cases involving the possession and sale of controlled substances. The four juries were all passed for cause, impaneled, and sworn on May 30. The multiple impaneling was an innovation in procedure motivated by the court's desire to economize on jury expenses. There was no objection to the procedure at the time of the original impaneling on May 30. Following impaneling, the cases were set for trial in sequence.

The first of the four cases tried was against Dale (Spike) Myers, a brother of the Lewis Myers involved here. The second case tried was a joint trial involving Kathy Shimp and Dan Clark. The cases involving the two defendants here were the third and fourth cases tried. The trial of defendant Lewis Myers began on June 2, 1972, and the trial of defendant Jim Brodrick began on June 5, 1972.

In each of the two cases now before the court, the defendant moved the court for a reexamination of the jurors previously examined and impaneled and requested further voir dire. The motion also included a request for a continuance. The basis for the motions was that some jurors had served on previous juries in the series, had heard the evidence in those trials, and all previous defendants had been found guilty of the drug offenses charged. The record establishes that the jury for the trial of defendant Lewis Myers included eight jurors

who had served on the jury for the first trial in the series. The jury for the trial of the defendant Brodrick included one juror from the first trial, seven jurors from the second trial, and one juror from the third trial in the series.

The same undercover agent for the Nebraska State Patrol was the principal witness for the State in all four trials. Max B. Ibach was also a witness for the State in both the third and fourth trials. Violet Woodrum and Steve Crow were also defense witnesses common to both the third and fourth trials. Dale (Spike) Myers, the defendant in the case tried first, was a witness for himself at the first trial as well as a witness for the defendants in both of the trials here. As an example of the possible interrelationship of the various cases, the undercover agent for the State who was the principal witness in all four cases, in the fourth case testified to a conversation involving himself, the defendant in the fourth case, and the defendant in the first case. The conversation dealt with the sale and payment for controlled substances.

Before either of the two trials involved here commenced, the court, out of the presence of the jury, held a hearing on the motion to reexamine the jurors. At that hearing the jury lists of the preceding trials in the series were presented and it was stipulated that the principal undercover agent was a witness in all previous cases and would be a witness in the case about to be tried. No evidence was presented to support the allegations of the motions that the principal undercover agent had appeared before service clubs where the testimony had been generally discussed. It was also stipulated that there had been guilty verdicts from the juries in all the previous cases in the series. The court then overruled the motions for reexamination and additional voir dire, and a continuance, called the jury, and the trials proceeded.

Article I, section 11, of the Constitution of Nebraska,

provides in part: "In all criminal prosecutions, the accused shall have the right to * * * a speedy public trial by an impartial jury * * *." Challenges for cause against prospective jurors are unlimited in number while peremptory challenges are limited in number by statute. See, §§ 29-2005, 29-2006, R. R. S. 1943.

Section 29-2006, R. R. S. 1943, provides, among other things, that it shall be good cause for challenge to any person called as a juror "that he has formed or expressed an opinion as to the guilt or innocence of the accused." Other portions of that statute indicate clearly that if any such opinion of a juror was founded upon "conversations with witnesses of the transactions or reading reports of their testimony or hearing them testify" the dismissal of such a juror is mandatory. It has been so interpreted. See Flege v. State, 93 Neb. 610, 142 N. W. 276. In that case a prospective juror who had read reports of a witness' testimony was held to be disqualified without reference to what he might say as to his ability to render an impartial verdict.

Section 29-2003, R. R. S. 1943, specifically provides that a juror having heard the evidence as to one defendant tried separately under a joint indictment, where the same evidence is later required, is incompetent to sit in further causes in the same indictment or information. It must be noted here that section 29-2007, R. R. S. 1943, requires that all challenges for cause "shall be made before the jury is sworn, and not afterward."

In the normal course of events trial to the jury follows immediately upon the impaneling and swearing of the jury. For that reason this court has consistently held that: "A party who fails to challenge the jurors for disqualification and passes the jurors for cause waives any objection to their selection." See, Thorpe v. Zwonechek, 177 Neb. 504, 129 N. W. 2d 483; Regier v. Nebraska P. P. Dist., 189 Neb. 56, 199 N. W. 2d 742. Those holdings are not applicable to the factual situation under the experimental procedure used here. A

challenge for cause at the time the juries were im-
paneled and sworn based upon the mere possibility that
a juror sitting on an early case might form an opinion
about the guilt or innocence of a defendant to be tried
later would have been purely speculative and unauthor-
ized by statute. The failure to object at that time should
certainly not be treated as a voluntary waiver of the
constitutional right to be tried by an impartial jury.

In State v. Eggers, 175 Neb. 79, 120 N. W. 2d 541, we
held that by passing the jurors for cause the defendant
waived any objection to their selection as jurors and
that the defendant is not permitted to change his mind
after an unfavorable verdict. In that same case it
should be noted this court specifically approved the fol-
lowing language from Seaton v. State, 106 Neb. 833, 184
N. W. 890: "It is the duty of a trial court to see that
defendants in criminal cases are tried by a jury such
that not even the suspicion of bias (leaning) or prej-
udice (prejudgment) can attach to any member thereof.
Unless the jury be absolutely impartial, the jury system
becomes an awkward instrument of justice and the con-
stitutional guaranty that every person charged with
an offense against the laws of this state * * * shall have
a public and speedy trial by an impartial jury * * * is
worthless."

The first sentence of the above quotation was also
quoted in one of the dissents in Bufford v. State, 148
Neb. 38, 26 N. W. 2d 383, followed by the statement:
"It was the duty of the trial court under the clear cir-
cumstances of this case and under this authority to
see to it that this defendant had a trial to a fair and
impartial jury, and no amount of discussion of waiver
or failure to further object by counsel for defendant can
wipe out the failure of the trial court to accord to the
defendant his constitutionally guaranteed right to a
trial by a fair and impartial jury."

Ordinarily, juries in criminal cases are impaneled and
sworn one case at a time and do not hear other cases

in any recessed time interval. Because the procedure involved here was experimental, this court has never passed on the specific issues involved. Analogous comparison may be made to situations in which juror disqualification arises after the jury has been impaneled, passed for cause, and sworn. In Fetty v. State, 119 Neb. 619, 230 N. W. 440, for example, the jury had been impaneled and sworn, opening statements of counsel had been made, some witnesses had testified, and the court adjourned for the day. Before trial resumed the next day, one juror was arrested for drunkenness and was in jail at the time for resumption of the trial. The trial court held a hearing and discharged the juror. This court held that under such circumstances it is the duty of the trial court to determine whether the juror's condition was such as to require his disqualification and if it was, the discharge of the entire jury was required. This court also clearly indicated that the trial court should not only hear the evidence as to disqualification but also examine the allegedly disqualified juror. The court in Fetty held that the disqualification of a juror after the jury had been impaneled and sworn required the discharge of the jury and the reexamination of the eleven remaining jurors for cause.

In the cases now before us, the trial court's failure to examine the jurors himself at the time of the motion for reexamination made it impossible to determine whether or not the witnesses and evidence the jurors had heard in the other trials had caused any of them to form or express an opinion as to the guilt or innocence of the defendants in the cases about to be tried. If even one juror could no longer be impartial, the Constitution and the statutes demanded the discharge of the jury and the impaneling of a new jury. At that point no evidence had been heard and a reimpaneling would have been relatively uncomplicated. The statute requiring that all challenges for cause shall be made before the jury was sworn was obviously designed for

the normal procedure in which trial regularly proceeds after the jury is sworn and without time intervals of several days during which the jury is hearing other criminal cases which may be interrelated.

The impaneling of multiple juries from a single jury panel for the subsequent trial of a series of criminal cases creates difficult substantive and procedural problems whenever individual jurors are selected on more than one jury and the cases to be tried may be interrelated. The possible saving of some jury expense cannot outweigh the constitutionally mandated requirements of a fair trial by an impartial jury. Where a jury has been impaneled and sworn as one of several juries selected from a single jury panel for the subsequent trial of a series of criminal cases, if the court is informed before the presentation of evidence begins of matters which might reasonably constitute grounds for a challenge for cause of one or more jurors, which grounds arose out of matters occurring after the jury was sworn, it is the duty of the court to hear evidence and examine the jurors and determine whether any juror might be subject to disqualification for cause. A failure to inquire under such circumstances constitutes such fundamental unfairness as to jeopardize the constitutional guaranty of the right to trial by an impartial jury. Any lowering of those constitutional standards strikes at the very heart of the jury system.

In view of the disposition made, the remaining assignments of error have not been considered.

The convictions and sentences in each case are vacated and the causes remanded for further proceedings.

· REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.

NEWTON, J., concurring.

I concur in the result reached in this case and in the opinion generally. Where multiple defendants have been apprehended and are tried for the same criminal offense, jurors who have sat upon and determined one case are disqualified to sit upon a second or third case

necessarily tried upon the same facts. This does not, however, disqualify other members of the jury panel.