Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
02/28/2017 08:08 AM CST

State of Nebraska, appellee, v.
Jeffrey A. Huff, appellant.
___ N.W.2d ___

Filed February 28, 2017.    No. A-15-897.

1. **Trial: Jurors.** The retention or rejection of a juror is a matter of discretion for the trial court. This rule applies both to the issue of whether a venireperson should be removed for cause and to the situation involving the retention of a juror after the commencement of trial.

2. **Trial: Motions to Dismiss: Jurors: Appeal and Error.** The standard of review in a case involving a motion to dismiss a juror is whether the trial court abused its discretion.

3. **Motions for Mistrial: Appeal and Error.** Decisions regarding motions for mistrial are directed to the discretion of the trial court, and will be upheld in the absence of an abuse of discretion.

4. **Sentences: Appeal and Error.** An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court.

5. **Trial: Juries.** Neb. Rev. Stat. § 29-2006 (Reissue 2008) establishes when jurors in a criminal trial may be challenged for cause.

6. ____: ____. All challenges for cause shall be made before the jury is sworn, and not afterward.

7. ____: ____. Neb. Rev. Stat. § 29-2004 (Reissue 2008) sets forth the procedure for replacing a juror who is discharged during trial with an alternate juror and refers to the discharge of a juror who has already been chosen as a juror.

8. **Sentences.** The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life.

Appeal from the District Court for Lancaster County: Robert R. Otte, Judge. Affirmed.

Joseph D. Nigro, Lancaster County Public Defender, and Robert G. Hays for appellant.

Douglas J. Peterson, Attorney General, and Kimberly A. Klein for appellee.

Moore, Chief Judge, and Riedmann and Bishop, Judges.

Riedmann, Judge.

## INTRODUCTION

Jeffrey A. Huff appeals from his conviction of first degree sexual assault in the district court for Lancaster County. On appeal, he challenges the court's dismissal of a juror and his corresponding motion for mistrial, and he claims that he received an excessive sentence. Finding no merit to the errors raised, we affirm.

## BACKGROUND

Huff was convicted by a jury of first degree sexual assault. Because the errors he raises on appeal do not involve the circumstances underlying the charge, we limit our recitation of the facts to those pertinent to our analysis.

The State filed an information charging Huff on April 15, 2015. Trial began with jury selection on August 10. Both parties questioned the prospective jurors and passed the panel for cause. The parties then exercised their peremptory challenges, and the jury, composed of 12 jurors and 1 alternate, was sworn in. The proceedings were then adjourned for the day, and the jury was excused until the following morning.

When trial reconvened on August 11, 2015, one juror, M.F., communicated that he was anxious about serving on the jury and was brought in to discuss the issue with the court and parties. M.F. explained that due to his upbringing, which included crime, gangs, drugs, and domestic assault, he did not think he was "suitable for [jury service] at all." M.F. was questioned as to whether he could listen to the evidence and jury instructions and be fair and impartial. He initially expressed that he did not think he would "be fair due to" his background and

experiences. He declined to state whether he thought he would be biased toward the State or toward Huff and indicated only that he felt he was not fit for jury service. Upon further questioning, however, M.F. agreed to follow the law and stated that he believed he could follow the instructions given, place his history and background aside, and fairly and impartially make a decision based on the evidence.

The State then moved to strike M.F. from the jury for cause, a motion to which Huff objected. The district court denied the motion at that point, observing that M.F. had taken the oath administered to the jury and opining that he perhaps merely experienced anxiety about jury service during the overnight break. The court indicated, however, that "we [could] keep an eye on that issue" as the trial progressed.

The parties then presented their evidence. After both parties rested, outside the presence of the jury, the court again raised the issue of M.F.'s fitness for jury service. The court expressed concern as to whether M.F. had been paying attention during trial but acknowledged the difficulty in making such a determination. After a brief discussion, the proceedings were adjourned to complete the jury instructions.

When the parties reconvened later that afternoon, the State offered into evidence a transcript of the initial questioning of M.F. and a printout of M.F.'s criminal history. Both exhibits were received into evidence over Huff's objection. The State argued that on a pretrial questionnaire, which was also received into evidence, M.F. had not been forthcoming about the extent or nature of his criminal history. The State then moved to strike M.F. from the jury for cause and replace him with the alternate juror. The court noted that after M.F. initially raised the issue of his own fitness for jury service, it denied the motion to strike him based on his statements that he could be fair and impartial. But based upon learning the truth of M.F.'s criminal record and his apparent disinterest during trial, the court granted the State's motion. Huff requested that the court question M.F. to assess his fitness or lack thereof, but the court declined and found sufficient cause to discharge

him from the jury. The court then excused M.F. and seated the alternate juror.

The parties then gave their closing arguments, and the court instructed the jury. Before the jury's verdict was announced, Huff moved for mistrial based on the court's decision to dismiss M.F. over his objection. The motion was denied. The jury found Huff guilty, and the court sentenced him to 12 to 20 years' imprisonment. Huff timely appeals to this court.

## ASSIGNMENTS OF ERROR

Huff assigns that the district court erred in (1) striking M.F. for cause over Huff's objection, (2) denying his motion for mistrial, and (3) imposing an excessive sentence.

## STANDARD OF REVIEW

[1,2] The retention or rejection of a juror is a matter of discretion for the trial court. This rule applies both to the issue of whether a venireperson should be removed for cause and to the situation involving the retention of a juror after the commencement of trial. *State v. Hilding*, 278 Neb. 115, 769 N.W.2d 326 (2009). Thus, the standard of review in a case involving a motion to dismiss a juror is whether the trial court abused its discretion. *State v. Krutilek*, 254 Neb. 11, 573 N.W.2d 771 (1998).

[3] Decisions regarding motions for mistrial are directed to the discretion of the trial court, and will be upheld in the absence of an abuse of discretion. *State v. Grant*, 293 Neb. 163, 876 N.W.2d 639 (2016).

[4] An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Custer*, 292 Neb. 88, 871 N.W.2d 243 (2015).

## ANALYSIS

*Striking M.F. From Jury.*

Huff argues that the district court erred in striking M.F. from the jury for cause over Huff's objection. Although we

disagree with the terminology used, we find that the district court's decision to remove M.F. from the jury was not an abuse of discretion.

[5,6] The district court's ruling was phrased as sustaining the State's motion to strike the juror for cause. In reality, however, the court discharged M.F. from the jury rather than striking him for cause. Neb. Rev. Stat. § 29-2006 (Reissue 2008) establishes when jurors in a criminal trial may be challenged for cause. *State v. Dixon*, 282 Neb. 274, 802 N.W.2d 866 (2011). The bases constituting good cause to challenge a juror under § 29-2006 include:

> (1) That he was a member of the grand jury which found the indictment; (2) that he has formed or expressed an opinion as to the guilt or innocence of the accused; . . . (3) in indictments for an offense the punishment whereof is capital, that his opinions are such as to preclude him from finding the accused guilty of an offense punishable with death; (4) that he is a relation within the fifth degree . . . to the person on whose complaint the prosecution was instituted, or to the defendant; (5) that he has served on the petit jury which was sworn in the same cause against the same defendant and which jury either rendered a verdict which was set aside or was discharged, after hearing the evidence; (6) that he has served as a juror in a civil case brought against the defendant for the same act; (7) that he has been in good faith subpoenaed as a witness in the case; (8) that he is a habitual drunkard; (9) the same challenges shall be allowed in criminal prosecutions that are allowed to parties in civil cases.

The challenges allowed in civil cases include challenges that the juror lacks any one of the qualifications mentioned in Neb. Rev. Stat. § 25-1601 (Reissue 2016) or that the juror has requested to be placed on the jury. See Neb. Rev. Stat. §§ 25-1609 and 25-1636 (Reissue 2016). All challenges for cause shall be made before the jury is sworn, and not afterward. Neb. Rev. Stat. § 29-2007 (Reissue 2016).

In the present case, the district court dismissed M.F. from the jury because of his apparent disinterest during trial and dishonesty on the juror questionnaire regarding his criminal history which was voluminous and included several assault convictions. The court's reasons for removing M.F. from the jury do not come under those bases included in § 29-2006, and thus, M.F. was not stricken from the jury for cause.

[7] Neb. Rev. Stat. § 29-2004 (Reissue 2008) sets forth the procedure for replacing a juror who is discharged during trial with an alternate juror. Section 29-2004 refers to the discharge of a juror who has already been chosen as a juror. See *State v. Hilding*, 278 Neb. 115, 769 N.W.2d 326 (2009). As the Supreme Court observed in *Hilding*, § 29-2004 does not specify the reasons for which a regular juror might be discharged, requiring replacement by an alternate juror. Section 29-2004 merely provides that if, before the final submission of the cause a regular juror dies or is discharged, the court shall order the alternate juror to take his or her place in the jury box. This was the procedure the district court followed in the present case when discharging M.F. and replacing him with the alternate juror.

Huff directs our attention to *State v. Myers*, 190 Neb. 466, 209 N.W.2d 345 (1973). In *Myers*, the Nebraska Supreme Court held that a party who fails to challenge jurors for cause waives any objection to their selection. The court further held that if grounds for a challenge for cause arise out of matters occurring after the jury was sworn, it is the duty of the court to hear evidence and examine the jurors and determine whether any juror might be subject to disqualification for cause. *Id*. A failure to inquire under such circumstances constitutes such fundamental unfairness as to jeopardize the constitutional guaranty of the right to trial by an impartial jury. *Id*. Any lowering of those constitutional standards strikes at the very heart of the jury system. *Id*. Relying on *Myers*, Huff argues that the State waived any argument that M.F. should be stricken from the jury because the State had access to M.F.'s criminal history

before trial started, from which it could have determined that he had been untruthful on his questionnaire. Huff also claims that the district court erred in failing to exercise its duty to question M.F. to determine whether there was good cause to discharge him.

Huff's reliance on *Myers* is misplaced, however, because, as we determined above, despite the court's terminology, M.F. was not stricken for cause, but, rather, he was discharged from the jury. Because there was no good cause under § 29-2006 to strike M.F. from the jury, the State's objection to M.F. as a juror was not waived and the duty to question M.F. prior to discharging him from the jury did not arise in the present case. The court therefore did not err in failing to question M.F. before deciding to discharge him from the jury. The question then becomes whether the court abused its discretion in dismissing M.F. We find it did not.

Nothing occurred during voir dire to raise questions regarding M.F.'s fitness for jury service. It was not until he raised the issue himself and subjected himself to additional scrutiny that the court questioned his ability to render a fair and impartial verdict. After the court initially declined to remove him from the jury, the State gathered further information on M.F., and his extensive criminal history and dishonesty were discovered. M.F. indicated on his juror questionnaire that he had never been charged with a crime other than a traffic offense, when in fact, he had not only been charged with numerous crimes, but had also been convicted of offenses dating back to 1983, including driving under the influence, violating a protection order, disturbing the peace, trespassing, stealing money or goods, and numerous convictions for assault. The trial court expressed concern not only because of the sheer volume of M.F.'s criminal record, but because his record includes charges for violent offenses such as assault and domestic assault, which are particularly relevant in the case at hand involving a charge of sexual assault of a victim known to Huff. The fact that M.F. had failed to disclose any criminal history on

his questionnaire raised additional concerns. The trial court also recognized that M.F. raised the issue of his own fitness, thereby subjecting himself to additional scrutiny by the court and parties as to whether he was fit for jury service and could render an impartial and unbiased decision.

Moreover, although the trial court initially denied the State's motion to dismiss M.F. from the jury, a transcript of the colloquy between M.F., the court, and the parties was received into evidence when the State renewed its motion. The State noted that M.F. did not provide unequivocal responses when questioned about his ability to render a verdict solely based on the evidence and law. He was questioned extensively by the court and parties when he first raised the issue of his own fitness, and he provided conflicting and unclear answers, repeatedly declaring himself unfit for jury service. When we examine the totality of the circumstances, including the fact M.F. raised an issue regarding his fitness for jury service, his responses to questioning by the court and parties, his lack of disclosure on his juror questionnaire, and his criminal history including offenses similar to the offense with which Huff was charged, based on the facts of this case, we cannot find that the district court abused its discretion in dismissing him from the jury and replacing him with an alternate. We therefore find no merit to this assignment of error.

*Motion for Mistrial.*

Based on our conclusion above, we also reject Huff's argument that the district court erred in denying his motion for mistrial based on the dismissal of M.F. Decisions regarding motions for mistrial are directed to the discretion of the trial court, and will be upheld in the absence of an abuse of discretion. *State v. Grant*, 293 Neb. 163, 876 N.W.2d 639 (2016). Huff claims that M.F. should not have been discharged from the jury and that because he was, Huff's motion for mistrial should have been granted. Finding that the court did not abuse its discretion in removing M.F. from the jury, we also

find no abuse of discretion in the decision to deny the motion for mistrial.

*Excessive Sentence.*

Huff argues that the district court abused its discretion in imposing an excessive sentence. We disagree.

Huff was convicted of first degree sexual assault, a Class II felony. See Neb. Rev. Stat. § 28-319 (Reissue 2016). A Class II felony is punishable by 1 to 50 years' imprisonment. Neb. Rev. Stat. § 28-105 (Cum. Supp. 2014). Thus, Huff's sentence of 12 to 20 years' imprisonment falls within the statutory limits. Nevertheless, he argues that his sentence is excessive because the court failed to meaningfully consider his family obligations, rehabilitative needs, efforts and desire to change, and ability to follow the conditions of probation.

[8] An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Custer*, 292 Neb. 88, 871 N.W.2d 243 (2015). When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the violence involved in the commission of the crime. *Id*. The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id*.

Huff was 31 years old at the time of sentencing. He was divorced and the father of two teenage children. The record indicates that he was current on his child support obligations and maintained a consistent relationship with his children. At the time of his arrest, he was employed as a line cook at a restaurant, earning $13 per hour.

His criminal history includes convictions for such crimes as disturbing the peace; stealing money or goods less than

$300; failure to appear; assault, strike, or cause bodily injury; refusing to comply with the order of a police officer; urinating in public; attempted possession of a controlled substance; third degree domestic assault; driving under the influence; and numerous traffic offenses. He was charged with assault, strike, or cause bodily injury on two additional occasions in 2003, but one charge was dismissed and one was amended to disturbing the peace. In 2010, he received 18 months' probation, but the term was later revoked. He was also placed on 18 months' probation in 2014 for second-offense driving under the influence.

The record of the sentencing hearing shows that the court considered the appropriate factors in determining Huff's sentence. The court noted that Huff had failed a prior probationary period, where his probation was revoked and he served jail time. The court determined that probation was not an appropriate option because it would depreciate the seriousness of the crime and promote disrespect for the law. The court also observed that this crime was "terrible" for the victim and Huff's children and stated that crimes against women and violent, sexual acts "just simply can't be tolerated." Based upon the record before us, we cannot say that the sentence imposed by the district court was an abuse of discretion. This assignment of error is therefore meritless.

## CONCLUSION

We conclude that the district court did not abuse its discretion in discharging M.F. from the jury, denying Huff's motion for mistrial, or imposing a sentence of 12 to 20 years' imprisonment. We therefore affirm Huff's conviction and sentence.

Affirmed.