STATE OF NEBRASKA, APPELLEE, v. FRANKLIN C. BEACH, APPELLANT.
337 N.W.2d 772

Filed August 12, 1983. No. 82-763.

Steven A. Russell of Jacobsen, Orr & Nelson, for appellant.

Paul L. Douglas, Attorney General, and G. Roderic Anderson, for appellee.

KRIVOSHA, C.J., BOSLAUGH, McCOWN, WHITE, HASTINGS, CAPORALE, and SHANAHAN, JJ.

HASTINGS, J.

The defendant, Franklin C. Beach, was found guilty of attempted sexual assault in the first degree by a jury in the District Court of Dawson County. The District Court thereafter sentenced him to 1 year at hard labor in the Nebraska Penal and Correctional Complex and fined him $900. The defendant has appealed the conviction.

On appeal defendant has assigned three errors to the decision of the trial court: (1) The court erred in failing to grant a mistrial after a witness for the prosecution made reference to a polygraph test; (2) The court erred in precluding the use of prior juvenile convictions of the prosecutrix for impeachment purposes; and (3) The sentence imposed by the court was excessive.

On August 23, 1980, defendant was employed as a part-time jailer with the Dawson County Sheriff's De-

partment, and had been so employed for the preceding 2 years. On that date defendant worked the night shift, from 11 p.m. on August 23 to 7 a.m. on August 24. At that time the prosecutrix was being held at that facility as a material witness to an armed robbery.

The testimony as to the events that transpired that evening varied greatly. The testimony of the prosecutrix showed the following: At about 12:30 a.m. the defendant went to her cell and woke her. He then released her from her cell and let her watch television in the jailer's station. She testified that they watched television for about an hour and a half. At approximately 2 to 2:30 a.m. the defendant began kissing her. He thereafter led her to another part of the jailer's station, pulled her to the floor on top of him, and rolled over on top of her. He proceeded to fondle her breasts, pulled down her pants, and penetrated her vagina with his penis. She was 14 years old at that time.

The defendant offered contrary testimony. He argued that he let her out of her cell to watch television in the jailer's station. The defendant also testified that he left the jailer's station to use the restroom. As he left the restroom, he ran into the prosecutrix, who, he said, grabbed him and began kissing him, and they fell to the floor. He testified that they were only on the floor for about 1 minute and that nothing happened between them.

After the events occurred on the morning of August 24, 1980, a complaint was made to the Dawson County sheriff, James Joneson, that the prosecutrix had been sexually assaulted by the defendant while in the Dawson County jail. Investigating this complaint, Sheriff Joneson interviewed defendant on September 2, 1980. At that time defendant told Joneson that he had let the prosecutrix out of her cell and allowed her to watch television on the night in question. The defendant also stated the prosecutrix said she would do anything to get her boyfriend,

who was being held for armed robbery in the Dawson County jail at that time, out of jail.

In recalling his conversation with defendant, Sheriff Joneson went on to state: "Starting where we left off, Mr. Beach stated to me that he got up from the jailer's station, went to the rest room, which is located directly to the north of the jailer's station around a partition; that when he came back out of the rest room [the prosecutrix] was standing in a small hallway between the surveillance cameras and the partition between that and the rest room, and that she started kissing him again, and that one thing led to another, and the next thing he knew they were on the floor doing it. I asked him what they were doing. Mr. Beach stated to me — Mr. Beach indicated to me that they were on the floor, that he could not remember if he took her clothes off or if she did. He could not remember if he had his pants clear off or just unzipped. I asked that specific question, 'Did you take your pants clear off or did you have them unzipped?' He could not remember.

"Frank then stated to me that he did not think penetration occurred because she was too small and he did not want to hurt her. Frank then stated to me that he got scared, his hip started bothering him bad and became painful, that he became quite sick by the thought of what he was doing, that he got up and zipped up his pants, allowed her to get her clothes on and then put her back in her cell block."

Joneson wrote down these statements made by defendant during the September 2 interview, read them back to defendant, and defendant signed them as his statement. The defendant disputed the accuracy of the signed statement at trial.

In determining which of these stories is the correct statement of what actually occurred, it seems clear from the verdict of the trial court that the jury believed the prosecutrix and the testimony of Sheriff Joneson. As we have said, when reviewing cases with conflicting testimony such as this, " 'It is not

the province of this court to resolve conflicts in the evidence, pass upon the credibility of witnesses, determine the plausibility of. explanations, or weigh the evidence. Such matters are for the trier of fact and the verdict must be sustained if, taking the view most favorable to the State, there is sufficient evidence to support it.' '' *State v. Farr*, 209 Neb. 163, 169, 306 N.W.2d 854, 858 (1981). Although the sufficiency of the evidence to support a judgment of conviction was not raised by the defendant, after examining the record and in light of the foregoing rules, we have no hesitancy in affirming the jury's verdict of guilty.

Turning now to the errors assigned by the defendant, he first complains that a mistrial should have been granted because a witness for the prosecution made reference to a polygraph test. The testimony to which the defendant is referring is that of Sheriff Joneson. At one point in his testimony he explained the steps he took in investigating the complaint. The testimony went as follows: "Q. What was the next thing you did in regard to this investigation [against the defendant]? A. The next thing I did after interviewing [the prosecutrix] was set up a polygraph." At this point defendant's counsel objected and moved for a mistrial. The court denied the defense motion on the basis of *State v. Vrchota*, 212 Neb. 567, 324 N.W.2d 394 (1982). The jury was thereafter instructed to disregard Joneson's response to the prosecution's last question.

The defendant argues that the mention of the word "polygraph" in the same sentence with reference to interviewing the prosecutrix gave rise to an inference that she took and passed a polygraph test, which thereby enhanced the credibility of her testimony in the eyes of the jury.

In *State v. Vrchota, supra*, we were faced with a very similar case. There, a witness made an inadvertent and unrequested reference to a polygraph. In deciding that case we relied on our decision in

*State v. Anderson and Hochstein*, 207 Neb. 51, 296 N.W.2d 440 (1980), *cert. denied* 450 U.S. 1025, 101 S. Ct. 1731, 68 L. Ed. 2d 219 (1981).

Discussing that case, we said: "In *State v. Anderson and Hochstein*, 207 Neb. 51, 296 N.W.2d 440 (1980), *cert. denied* 450 U.S. 1025, 101 S. Ct. 1731, 68 L. Ed. 2d 219 (1981), a witness mentioned the word 'polygraph' on redirect examination. The witness did not indicate whether he had taken such a test or what the results were. The defense counsel made a timely motion for mistrial. The motion was overruled and the trial judge gave a curative instruction. In holding that the denial of a mistrial was not error, we said: 'The mere mention of the word "polygraph," absent more, does not constitute prejudicial error. Appellants have failed to disclose how or in what manner the use of the word "polygraph" was prejudicial under the circumstances . . . .' *Id.* at 67, 296 N.W.2d at 451.

"Here the reference to the polygraph test was volunteered by the witness, and the result of the test was not disclosed. Prompt objection was made and the trial court instructed the jury to disregard the reference to the lie detector test. There was no further reference to the test." 212 Neb. at 569, 324 N.W.2d at 396.

We see no difference between the *Vrchota* and *Anderson and Hochstein* cases and the one at bar. In all three of these cases the mention of a polygraph test was inadvertent and unrequested; the results of the tests were not disclosed; the reference was properly objected to; and the trial court instructed the jury to disregard the references to the polygraph tests. In those cases the reference was not prejudicial, and we find the reference in this case did not prejudice the defendant. Therefore, we find that the trial court was correct in overruling the defense motion for a mistrial.

Next, defendant argues he was improperly denied the opportunity to introduce prior juvenile adjudi-

cations of the prosecutrix for impeachment purposes. The defendant's complaint is based upon the trial court's granting of the State's motion in limine, precluding the use of any prior juvenile adjudications of the prosecutrix. The defendant claims he was thereby denied his right to effectively confront and cross-examine witnesses.

In support of this argument defendant relies heavily on *Davis v. Alaska*, 415 U.S. 308, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974). In that case the Supreme Court held that a criminal defendant should have been allowed to introduce evidence that the witness for the State, who implicated and identified the defendant as the perpetrator of the criminal act in question, had a prior juvenile record, and as to the fact that this witness was on juvenile probation at the time he testified.

Although on its face *Davis* may seem to be similar to the one at bar, a careful reading of it shows that it is distinguishable. In *Davis* the defendant claimed the witness for the State testified against the defendant out of fear that his probation would be revoked if he failed to so testify. In that case the defendant sought to introduce the prior juvenile record into evidence, not just to attack the credibility of that witness as a dishonest person but also to show that the testimony of the witness was somehow coerced and motivated by the State's threat of probation revocation. Therefore, it was contended this testimony was not believable.

The case before us presents a different situation. The only use of the prosecutrix's prior juvenile record by the defendant, that we can determine, is to show she is dishonest. The defense wanted to cast her as a dishonest juvenile offender in front of the jury, in hopes that the jury would disbelieve her. No bias or motive would be shown by these prior juvenile adjudications, as was true in the *Davis* case.

Such a use is improper under the Nebraska Evidence Rules. Neb. Rev. Stat. § 27-609 (Reissue 1979)

allows for the use of certain prior criminal convictions for the impeachment of witnesses. Subsection (4) of that statute states: "Evidence of juvenile adjudications is not admissible under this rule." We have interpreted this statute to be a bar to the admission of prior juvenile adjudications for impeachment purposes. See *State v. Caradori*, 199 Neb. 691, 260 N.W.2d 617 (1977). On this basis we find that the trial court's granting of the State's motion in limine was proper.

Finally, defendant claims his sentence was excessive. The defendant initially pleaded guilty to the charge of attempted sexual assault in this case. For this he was sentenced to probation for 3 years. The defendant later sought to withdraw this plea, and in *State v. Beach*, 211 Neb. 660, 319 N.W.2d 754 (1982), we held that he should be allowed to do so, and remanded the case to the District Court for further proceedings. As stated above, the trial court, after the jury found defendant guilty, sentenced him to 1 year in the Nebraska Penal and Correctional Complex and fined him $900.

The defendant argues that to increase his sentence after a new trial penalizes him for exercising his right to appeal. Therefore, it is argued, this increase in sentence is improper. arbitrary, and excessive. In support of this argument defendant primarily relies upon *North Carolina v. Pearce*, 395 U.S. 711, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969).

In that case the Supreme Court stated: "It can hardly be doubted that it would be a flagrant violation of the Fourteenth Amendment for a state trial court to follow an announced practice of imposing a heavier sentence upon every reconvicted defendant for the explicit purpose of punishing the defendant for his having succeeded in getting his original conviction set aside. Where, as in each of the cases before us, the original conviction has been set aside because of a constitutional error, the imposition of such a punishment, 'penalizing those who choose to

exercise' constitutional rights, 'would be patently unconstitutional.'. . . . But even if the first conviction has been set aside for nonconstitutional error, the imposition of a penalty upon the defendant for having successfully pursued a statutory right of appeal or collateral remedy would be no less a violation of due process of law. 'A new sentence, with enhanced punishment, based upon such a reason, would be a flagrant violation of the rights of the defendant.' . . . A court is 'without right to . . . put a price on an appeal. . . .' '' (Citations omitted.) *Id.* at 723-24.

Under the decision in *Pearce* it is clearly improper for a trial court to sentence a defendant to a greater sentence after appeal and retrial simply because the defendant exercised his right to appeal.

It must be pointed out that the Court in *Pearce* also stated: "We hold, therefore, that neither the double jeopardy provision nor the Equal Protection Clause imposes an absolute bar to a more severe sentence upon reconviction. A trial judge is not constitutionally precluded, in other words, from imposing a new sentence, whether greater or less than the original sentence, in the light of events subsequent to the first trial that may have thrown new light upon the defendant's 'life, health, habits, conduct, and mental and moral propensities.' *Williams v. New York*, 337 U.S. 241, 245 [69 S. Ct. 1079, 93 L. Ed. 1337 (1949)]. Such information may come to the judge's attention from *evidence adduced at the second trial* itself, from a *new presentence investigation*, from the defendant's prison record, or possibly from other sources." (Emphasis supplied.) *Id.* at 723.

And, finally: "In order to assure the absence of such a motivation, we have concluded that whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identi-

fiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. And the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal." *Id.* at 726.

It seems, by the decision in *Pearce*, the trial court in its discretion could increase the defendant's sentence without violating his due process rights, if such action was justified by reasons affirmatively appearing in the record.

When sentencing the defendant after trial, the trial court made the following statements as to why the defendant's sentence was increased: "Mr. Beach, the perception the Court has in this case is considerably different than when you appeared here before. At that time you had pled guilty to assault with intent to commit first-degree sexual assault, and even though you protested it was the impression of the Court that you had as a matter of fact assaulted this 14-year-old girl with intent to commit statutory rape. However, after listening to the evidence, why, it's my opinion that you actually did rape her. I think that the evidence that was adduced would have supported a charge to go to the jury on the fact that you were guilty of first-degree sexual assault. The county attorney did you a great favor when he charged you with assault, with intent to commit first-degree sexual assault. This is greatly different than the perception that I had when I sentenced you before.

"In addition to that, you were given credit the time before for having pled guilty and having saved the State of Nebraska the time and the expense of having a jury trial. That is no longer true. So that you don't get credit for that saving of money that was present before.

"I do not feel that it would be possible to send you to jail with the situation here. I do not feel that you

would make an *adequate candidate for probation with the attitude that you have*. In addition to that, I feel that it would *depreciate the seriousness of the crime to place you on probation.*

"For all of those reasons, it is the judgment of the Court that you be, and you hereby are, sentenced to the Nebraska Penal and Correctional Complex for a period of one year at hard labor, Sundays and holidays excepted, and that you pay all costs of this prosecution. In addition to that, you are fined in the amount of $900.00. Solitary confinement is no part of this sentence, except for disciplinary reasona [sic] at that institution." (Emphasis supplied.)

As the discussion of the evidence adduced at trial shows, there is support in the record for the court's belief that not only did defendant attempt to sexually assault the prosecutrix but in fact completed the act of sexual assault.

After initially pleading guilty defendant was ordered committed for evaluation to the Department of Correctional Services for a period not to exceed 90 days. After that commitment the evaluation team concluded that incarceration of the defendant was not necessary; rather, they felt he needed long-term counseling. After trial a second presentence report was formulated. The evaluation in this report made a different recommendation: "This Officer has taken into consideration the Defendant's prior record, his stability in the community, the recommendation from the Nebraska Penal and Correctional Complex and also the Defendant's attitude towards the Present Offense in that he has not accepted any guilt in regards to the Present Offense and does not have any remorse. Also, this Officer has taken into consideration the severity of the Present Offense. It appears to this Officer that even though probation was recommended by the Nebraska Penal and Correctional Complex and even though there are certain factors in favor of probation, this Officer believes that anything less than incarceration would depreci-

ate from the seriousness of the offense. Probation is not recommended."

From the record it appears that the trial court's increase in the sentence of defendant was based upon matters which came to light from the evidence adduced at the second trial and on the second presentence report. Such matters as these are specifically provided in *Pearce* as proper bases for increasing a defendant's sentence after retrial. Therefore, we find this increase in sentence was properly within the discretion of the trial court.

Sexual assault in the first degree is defined in relevant part as "(1) Any person who subjects another person to sexual penetration and . . . (c) the actor is nineteen years of age or older and the victim is less than sixteen years of age is guilty of sexual assault in the first degree." Neb. Rev. Stat. § 28-319 (Reissue 1979). The defendant was 34 years of age in August of 1980. Subsection (2) of this statute classifies this offense as a Class II felony.

Neb. Rev. Stat. § 28-201(4)(b) (Reissue 1979) states that the attempt of a Class II felony is a Class III felony. Neb. Rev. Stat. § 28-105 (Reissue 1979) provides the penalty of a Class III felony to be a maximum of 20 years' imprisonment, or $25,000 fine, or both; minimum, 1 year's imprisonment.

The sentence imposed by the trial court is clearly within the statutory sentencing guidelines. As we have stated repeatedly in the past, " 'In the absence of an abuse of discretion by the trial court we will not disturb on appeal a sentence imposed within the statutory limits.' " *State v. Ellefson*, 214 Neb. 747, 754, 336 N.W.2d 88, 92 (1983). We find no abuse of discretion.

We find the sentence imposed by the trial court was within the proper discretionary limits of that court and therefore affirm the judgment and sentence of the trial court.

AFFIRMED.