STATE OF NEBRASKA, APPELLEE, V. GREGORY MCCOY, APPELLANT.
418 N.W.2d 250

Filed January 29, 1988.   No. 87-366.

Dennis R. Keefe, Lancaster County Public Defender, and Robert G. Hays, for appellant.

Robert M. Spire, Attorney General, and Jill Gradwohl Schroeder, for appellee.

BOSLAUGH, CAPORALE, and GRANT, JJ., and MULLEN, D.J., and COLWELL, D.J., Retired.

CAPORALE, J.

Following a jury trial, defendant, Gregory McCoy, was found guilty of tampering with a witness by attempting to induce him to testify falsely, in violation of Neb. Rev. Stat. § 28-919 (Reissue 1985), and was sentenced to imprisonment for a period of not less than 18 months nor more than 2 years. In this appeal defendant assigns as error the district court's (1) finding the evidence sufficient to sustain the conviction and (2) failure to properly instruct the jury concerning the elements of the crime charged. We affirm.

At approximately 5:15 p.m. on July 17, 1986, a then unknown intruder knocked on the door of a room occupied by two university students, Soon Ang and Kim Sun Loh, in Schramm Hall, a dormitory on the University of Nebraska-Lincoln campus. Neither student responded to the knocks. A couple of seconds later, the unlocked door was opened and the intruder walked into the room. Upon seeing the occupants, the intruder asked, "Is Mark home?" then immediately left. No one by the name of Mark lived in the room.

Ang became suspicious and went to look for the intruder. As Ang walked down the hallway, he saw a person, wearing clothing of a color matching that worn by the intruder, "sliding" into the laundry room. Ang then called the residence hall director and reported the incident.

About the same time, Deborah Larkin, an officer with the university police department, received a radio message regarding a man who had been unlawfully in the residence hall. Larkin pulled into the Schramm Hall parking lot and saw a man

standing there who matched the radio description of the intruder. Larkin began a casual conversation with the man, who turned out to be McCoy. When Larkin asked McCoy why he was standing in the Schramm Hall parking lot, he stated he was waiting for an acquaintance, one Bill Benner. McCoy denied having been in Schramm Hall. `

In the meantime, another university police officer had been interviewing Ang, who then went out into the parking lot and identified McCoy as the intruder. The officer passed that information on to Larkin. McCoy was then arrested and charged with first degree criminal trespassing.

Benner, with whom McCoy had been living for approximately the last 10 days in July, became aware of the trespassing charge against McCoy by seeing the citation for the offense. When asked about the citation, McCoy responded, according to Benner, that "the cops of Lincoln were out to get him" and that "they would do anything to get rid of him from this town."

· McCoy moved out of Benner's apartment and returned 3 days later, on August 4, 1986, to report that he, McCoy, was in trouble, that the "cops" were after him, and that at a hearing in connection with the trespassing charge, he had stated that he spent the evening with Benner. McCoy then asked Benner to testify that they had been together, offering to pay Benner $20 to so do. Benner had in fact not been with McCoy, refused McCoy's request, and reported the conversation to the university police.

The statute under which McCoy was convicted, § 28-919, reads in relevant part: "(1) A person commits an offense if, believing that an official proceeding or investigation of a criminal matter is pending or about to be instituted, he attempts to induce or otherwise cause a witness . . . to: (a) Testify or inform falsely . . . ."

McCoy claims the evidence is insufficient to sustain the conviction because Benner was not a witness within the meaning of the term as used in the foregoing statute. In so claiming, he places heavy reliance upon *Gandy v. State*, 77 Neb. 782, 110 N.W. 862 (1906), wherein the accused offered to pay one Fisher to give false testimony in a civil action in which the

accused was a party and to steal a document from one involved in the case as a witness. Fisher was not told what he was to say when offered the money, being told instead that he would be given that information later. The accused was charged with violating a statute which then made it a crime to " 'attempt to corrupt or influence any . . . witness, either by promises, threats, letters, money, or any other undue means, either directly or indirectly . . . .' " *Id.* at 783, 110 N.W. at 863. In ruling that while the accused had attempted to suborn perjury he was not guilty of the crime with which he was charged, the court noted that Fisher had never heard of the case, did not know the parties, knew no fact relating to the matter, and never intended to testify, and thus was not a witness, such being "one who has knowledge of a fact or occurrence sufficient to testify in respect to it." *Id.* at 785, 110 N.W. at 864. The fact must, of course, be relevant to the case concerning which the witness is approached.

In affirming a conviction for tampering with a witness, a Texas court recently observed that witness-tampering statutes cover the broad spectrum of all persons who pose a threat to a criminal defendant because of what they know. *Morlett v. State*, 656 S.W.2d 603 (Tex. App. 1983). Also, the language of § 28-919 is substantially similar to that found in Model Penal Code § 241.6 (1980). The American Law Institute comment to § 241.6 explains that the "critical question is whether the defendant attempts to influence another's behavior as a witness. If he does, it is no defense that the other person has not yet been subpoenaed or does not intend to testify." § 241.6 note on status of section at 167-68.

While we bear in mind that criminal statutes must be strictly construed, *Loewenstein v. Amateur Softball Assn., ante* p. 454, 418 N.W.2d 231 (1988); *State v. Burke*, 225 Neb. 625, 408 N.W.2d 239 (1987), we must nonetheless conclude that Benner was a "witness" as the term is used in § 28-919.

The situation presently before us is different from that presented in *Gandy*. In *Gandy*, the person asked to testify falsely knew absolutely nothing about the subject matter of the litigation. In the present case Benner knew that the claim McCoy had made during the investigation of the trespassing

charge and at a court proceeding in connection with that charge was untrue. Thus, Benner did possess knowledge of a relevant fact sufficient to testify to it should McCoy persist in his claim that he had been with Benner at the time of the trespass. There is no question, therefore, that McCoy attempted to influence Benner's behavior as a witness. By falsely claiming he was with Benner at the time of the trespass, McCoy set Benner apart from the rest of the universe and thus put Benner in the position of being able to contradict McCoy's false claim; McCoy had in effect identified Benner as a potential witness. As a consequence, when McCoy asked Benner to testify falsely, he was attempting to influence Benner's behavior as a witness. There is therefore no merit to McCoy's first assignment of error.

Defendant next urges the trial court erred by failing to instruct the jury that the State had the burden of proving beyond a reasonable doubt that Benner was a witness.

The jury was instructed that the material elements "the State must prove by evidence beyond a reasonable doubt" included that McCoy "intentionally did attempt to induce [Benner] to testify falsely" in favor of McCoy. Thus, while the instruction did not use the word "witness," it defined what a witness does, namely, testify. Thus, McCoy's second claim is as meritless as his first.

The record failing to sustain either of McCoy's assignments of error, the judgment of the district court is affirmed.

AFFIRMED.