STATE OF NEBRASKA, APPELLEE, V. ARVELL COOK, APPELLANT.

509 N.W.2d 200

Filed December 17, 1993.    No. S-92-1096.

Thomas M. Kenney, Douglas County Public Defender, and Kelly S. Breen for appellant.

Don Stenberg, Attorney General, and Mark D. Starr for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, FAHRNBRUCH, and LANPHIER, JJ., and GRANT, J., Retired.

HASTINGS, C.J.
Arvell Cook appeals his convictions, following trial by jury, of first degree murder and use of a firearm to commit a felony. He assigns as error the giving of instruction No. 12, which defined reasonable doubt, and the sufficiency of the evidence to sustain the murder conviction. We affirm.

On the evening of February 29, 1992, Nebraska Morrow was working at M & G Enterprises, a package liquor and general store in Omaha. Morrow, 65 years old, was a co-owner of the business. Employee Bolden Hooper was also working at the store that night.

At approximately 8 or 8:30 p.m., the appellant, Cook, came into the store. Hooper testified that he was waiting on a customer when he saw Cook talking to Morrow and raising the countertop to go behind it into an employees-only area. Hooper then saw Morrow hit Cook once with a large stick which was kept behind the counter. Cook fell to the ground and was bleeding from a wound to his head. Morrow's nephew, Terrence Sledge, took Cook's hand, helped him to his feet, and told him to leave the store.

After Cook got up he repeatedly asked Morrow to come out from behind the counter to fight him. Sledge stated that Cook walked out the door, but came back in and said, "Nebraska, you're dead," three times before he finally left the store. Sledge estimated that this incident took place at 9:30 p.m.

Morrow called the police to report the disturbance. Omaha police officer James Arndt stated that he responded to the dispatch at approximately 9:45 p.m. Morrow told him that there had been a disturbance outside which had carried into the store, but that the individuals involved had already left and that there was no more problem. Morrow also told Arndt that he had struck one of the individuals with a "wooden bat" when the man tried to climb over the counter and that he was concerned that the man might need medical attention.

Although Morrow told the police officer that he did not know the names of the men involved in the disturbance, he called his brother, Napoleon Morrow, after the incident and told his brother that he had hit a man named "Cooks" when the man had tried to force his way behind the counter. Napoleon Morrow identified Cook as the man known as Cooks.

Around midnight, Kiesha Jackman, Tiffany Pogue, Tyrone Watson, and three other friends arrived at M & G Enterprises to buy some beer. Jackman testified that she was driving her mother's car and that she backed into the parking lot because she was afraid of the neighborhood. Pogue stated that three

members of the group went into the store while the others waited in the car. While she was waiting in the car, she saw a man walking "catty-corner across the parking lot." Jackman told her that the man had a gun, and Pogue then saw that the man had a gun by the side of his leg. Pogue identified the man with the gun as Cook. She testified that he was walking by himself and that he was not running, staggering, or tripping. She saw Cook walk up to the front door and stop for 20 or 30 seconds to look around inside; he then "swung the door open and walked inside." She said that about 1 1/2 or 2 minutes later she heard a shot, and then she saw two women run out of the store. After that, she observed Cook, still carrying the gun, walk out of the store and back across the parking lot. She did not see any blood on him at that time, but did notice what looked like a sore on his head. She said that his eyes were "glazed over a little bit."

Four other witnesses testified variously to seeing Cook go into the store and shoot Nebraska Morrow. All identified Cook at trial as the man who had fired the shotgun.

The shotgun blast to the upper left portion of Morrow's chest severed his aorta, the major blood vessel carrying blood away from the heart. A pathologist testified that death occurred within minutes.

Although the weapon was not recovered during the subsequent investigation, a search of Cook's residence on the morning after the shooting produced a spent .410 shotgun shell.

Following his convictions, Cook was sentenced to consecutive terms of life imprisonment for first degree murder and 10 years imprisonment for use of a firearm in the commission of a felony, with credit given for 263 days served. Apparently contending that his head injury caused him to act with "clouded reason," Cook asserts that the evidence in this case is so lacking in probative force that it is insufficient as a matter of law to support the conviction for first degree murder. He further argues that a rational trier of fact would have found him guilty of manslaughter.

In reviewing a criminal conviction, it is not the province of an appellate court to resolve conflicts in the evidence, pass on the credibility of witnesses, determine the plausibility of explanations, or weigh the evidence. Such matters are for the

trier of fact, and the verdict of the jury must be sustained if, taking the view most favorable to the State, there is sufficient evidence to support it. *State v. Thompson, ante* p. 375, 507 N.W.2d 253 (1993); *State v. Russell*, 243 Neb. 106, 497 N.W.2d 393 (1993).

We recently stated in *Thompson*:

A person commits murder in the first degree if he or she kills another person purposely and with deliberate and premeditated malice. Neb. Rev. Stat. § 28-303(1) (Reissue 1989). "Purposely," as an element of first degree murder, means intentionally. . . . The intent involved in an actor's conduct is a mental process and may be inferred from the conduct itself; the actor's language, if any, in reference to the conduct; and the circumstances surrounding the conduct. . . .

"Malice," like intent, concerns the state of mind of the slayer and may be inferred from the words and acts of the defendant, the circumstances surrounding his or her conduct, and the evidence relating to the circumstances of the criminal act. . . . Malice is that condition of the mind which is manifested by the intentional doing of a wrongful act without just cause or excuse. . . .

" 'Deliberate malice' and 'premeditated malice' are separate and distinct elements of the crime of murder in the first degree. . . .

" 'Deliberate' means not suddenly, not rashly; but deliberation requires that the defendant considered the probable consequences of his or her act before doing the act. . . . A person kills with 'deliberate malice' when he or she, without just cause or excuse, kills another not suddenly or rashly, but after considering the probable consequences of doing the act.

" 'Premeditated' means to have formed a design to commit an act before it is done. . . . A person kills with "premeditated malice" if before the act causing the death occurs, he or she has formed the intent or determined to kill the victim without legal justification."

(Citations omitted.) *Ante* at 399-400, 507 N.W.2d at 270-71.

A verdict in a criminal case must be sustained if the evidence,

viewed and construed most favorably to the State, is sufficient to support that verdict. Moreover, on such a claim, an appellate court will not set aside a guilty verdict in a criminal case where such verdict is supported by relevant evidence. Only where evidence lacks sufficient probative force as a matter of law may an appellate court set aside a guilty verdict as unsupported by evidence beyond a reasonable doubt. *State v. Thompson, supra*; *State v. Connely*, 243 Neb. 319, 499 N.W.2d 65 (1993).

Here it is clear that the jury verdict finding Cook guilty of first degree murder is supported by relevant evidence. The question of premeditation is for the jury to determine. No particular length of time for premeditation is required, provided that the intent to kill is formed before the act is committed and not simultaneously with the act that caused the death. *State v. Batiste*, 231 Neb. 481, 437 N.W.2d 125 (1989).

Malice may be inferred from the shooting of another person with a deadly weapon. *State v. Thompson, supra*; *State v. Nielsen*, 243 Neb. 202, 498 N.W.2d 527 (1993).

The jury here was properly instructed on the elements of first degree murder and also of manslaughter, which, under the facts of this case, would have required a showing that the killing was done "upon a sudden quarrel" and "without malice." Neb. Rev. Stat. § 28-305(1) (Reissue 1989).

The evidence of Cook's words and actions and the circumstances surrounding his conduct clearly justified the jury in finding beyond a reasonable doubt that he had committed the crime of first degree murder, rather than the lesser offense of manslaughter. This assignment of error is without merit.

Cook next asserts that the trial court erred in overruling his objection to the jury instruction taken from NJI 14.08 defining reasonable doubt. The challenged instruction was previously examined by this court in *State v. Morley*, 239 Neb. 141, 474 N.W.2d 660 (1991), *habeas corpus granted, Morley v. Stenberg*, 828 F. Supp. 1413 (D. Neb. 1993). In *State v. Morley*, the appellants asserted that the instruction, by inaccurately defining "reasonable doubt," allowed the jury to find them guilty on the basis of a lesser quantum of proof than is required under the Due Process Clause of U.S. Const. amend. XIV. We distinguished the questioned instruction from the reasonable

doubt instruction found objectionable in *Cage v. Louisiana*, 498 U.S. 39, 111 S. Ct. 328, 112 L. Ed. 2d 330 (1990), and found that the questioned instruction did not lessen the State's burden of proof below the requisite standard, nor did it violate the due process requirements of the 14th Amendment. See, *State v. Van Ackeren*, 242 Neb. 479, 495 N.W.2d 630 (1993), *cert. denied* ____ U.S. ____, 114 S. Ct. 113, 126 L. Ed. 2d 78; *State v. Victor*, 242 Neb. 306, 494 N.W.2d 565 (1993), *cert. granted in part* ____ U.S. ____, 114 S. Ct. 39, 125 L. Ed. 2d 788; *State v. Drinkwalter*, 242 Neb. 40, 493 N.W.2d 319 (1992); *State v. Lewis*, 241 Neb. 334, 488 N.W.2d 518 (1992). Thus, under the authority of *State v. Morley*, Cook's second assignment of error is also without merit.

It is true that in *Morley v. Stenberg, supra*, the U.S. District Court for the District of Nebraska found that the challenged instruction so misstated the degree of certainty necessary to convict that it violated the Constitution by lowering the State's burden of proof. However, the U.S. Supreme Court has granted certiorari in *State v. Victor, supra*, involving the same issue. Unless there is a definitive holding by that Court upholding the claimed unconstitutionality of our instruction on burden of proof, we will continue to adhere to our ruling in *State v. Morley, supra*.

The judgment of the district court is affirmed.

AFFIRMED.