STATE OF NEBRASKA, APPELLEE, V. ANTHONY A. CISNEROS, APPELLANT.

535 N.W.2d 703

Filed July 14, 1995.    No. S-94-255.

Jerry Matthews for appellant.

Don Stenberg, Attorney General, and Marilyn B. Hutchinson for appellee.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, and CONNOLLY, JJ.

LANPHIER, J.

After a jury trial in the district court for Dawes County, Anthony A. Cisneros was convicted of tampering with a witness. The jury found Cisneros not guilty of pandering, but did not reach a verdict on charges of sexual assault. Cisneros appealed to the Court of Appeals and claimed that the trial court should have dismissed the case after it had declared a mistrial, that there was insufficient evidence to convict, and that his sentence was excessive. The Court of Appeals affirmed his conviction and sentence in all respects. We granted Cisneros' petition for further review. Finding no merit in any of his assignments of error, we affirm the holdings of the lower courts. However, in addition, we address two concerns which arise from a review of the record. First, the juror misconduct which resulted in a mistrial is partially attributable to the district court's practice of impaneling multiple juries at the beginning of its term for all trials scheduled that term. Any cost savings allegedly realized by this practice (which practice has been criticized by this court in the past) were surely offset by the potential for mistrial when the extended time period between jury selection and trial created an opportunity for a juror to discuss the case with potential witnesses. Second, Cisneros was

permitted to use confidential information contained in juvenile court records to disparage a witness in a manner not contemplated by evidentiary rules.

## BACKGROUND

On March 1, 1993, the alleged victim went to the Second Hand Rose, a pawnshop, in order to pawn a ring. She alleged that the proprietor, Cisneros, fondled her breasts, buttocks, and inner thighs against her will. She further alleged that Cisneros offered her money in exchange for sexual relations and told her that she could get money if she would have sexual relations with his friend. The alleged victim said she escaped from the pawnshop and ran out to her mother who was waiting in the car.

The alleged victim's mother testified that her daughter, the alleged victim, was upset and crying when she left the pawnshop. The mother testified that her daughter told her that Cisneros had touched her and offered to pay her for sex. The mother testified that she dropped her daughter off at the daughter's apartment and then went to the police station to report the incident.

After the alleged victim's mother dropped the alleged victim off at her apartment, the alleged victim recounted the alleged incident to her boyfriend, Russell Cavaness. Cavaness and the alleged victim then went to the pawnshop to confront Cisneros. The alleged victim waited outside. According to Cavaness, Cisneros admitted touching the alleged victim and offered Cavaness $20 to not report the incident to the police. Cavaness went outside and talked it over with the alleged victim, and they decided to take the money.

Meanwhile, the alleged victim's mother reported the incident to the police. Statements were taken from the alleged victim, her mother, and Cavaness regarding the alleged sexual assault and the $20 payment. In an amended information, Cisneros was charged with three counts of third degree sexual assault, Neb. Rev. Stat. § 28-320(1) (Reissue 1989); two counts of attempted pandering, Neb. Rev. Stat. § 28-802 (Reissue 1989); and two counts of tampering with a witness, Neb. Rev. Stat. § 28-919 (Reissue 1989).

Cisneros' case was set for trial on August 23, 1993. On

August 2, the district court impaneled juries for all of the trials scheduled during its August term, including Cisneros' trial.

Between jury selection and the trial, one of the jurors had a conversation with a potential witness in the case. The witness expressed his opinion to the juror that everything had been blown out of proportion and that the matter should never have gone to court.

That same juror was acquainted with the alleged victim's mother. On August 5 or 6, the alleged victim's mother and the juror discussed the case over the telephone. On August 7, the alleged victim's mother and the juror encountered each other at a church meeting and further discussed the case and the juror's possible biases. The alleged victim's mother thought the juror was prejudiced against unmarried, pregnant girls. Since the alleged victim was unmarried and pregnant, her mother thought the juror should be removed.

On August 9, the alleged victim's mother called the Dawes County Attorney's office and left a message regarding her objections to the juror. The prosecutor was in trial, so the alleged victim's mother stopped by his office the next day and left a written statement. Receiving no response, she contacted Officer John A. Herron of the Chadron Police Department on August 12. Herron contacted the juror and confirmed that the juror had conversed with the alleged victim's mother and the witness.

Cisneros' attorney learned of the juror misconduct on August 13, and on August 17 submitted a motion for a mistrial. The court granted the mistrial on the ground of juror misconduct and specifically stated that the mistrial was not granted due to any misconduct on the part of Herron or anyone else. That same day, the court rescheduled the trial for December 8.

On December 6, the district court conducted jury selection for the trials scheduled during its December term. Following several continuances, Cisneros' trial began on January 3, 1994. At the close of the State's case, the district court dismissed one count of sexual assault, one count of attempted pandering, and one count of tampering with a witness. The jury was unable to reach a verdict on the two counts of third degree sexual assault. The jury returned a verdict of not guilty on the remaining

attempted pandering charge and guilty of tampering with a witness. The district court sentenced Cisneros to 70 days in the county jail, with work release, for his conviction of tampering with a witness, a Class IV felony.

Cisneros appealed to the Court of Appeals. Cisneros asserted that the district court erred by (1) not granting his motion for mistrial with prejudice, (2) finding him guilty as a matter of law on the charge of witness tampering, and (3) imposing an excessive sentence. The Court of Appeals affirmed Cisneros' conviction and sentence. *State v. Cisneros*, 95 NCA No. 6, case No. A–94–255 (not designated for permanent publication). We granted Cisneros' petition for further review.

## ASSIGNMENTS OF ERROR

Cisneros asserts that the Court of Appeals improperly (1) refused to determine whether the mistrial caused by prosecutorial misconduct barred further trial in this matter, (2) determined that there was sufficient evidence to convict him of tampering with a witness, (3) determined that the sentence was not an abuse of discretion by the district court.

## STANDARD OF REVIEW

In the absence of plain error, where an issue is raised for the first time in a higher appellate court, it will be disregarded inasmuch as a lower court cannot commit error in resolving an issue never presented and submitted to it for disposition. *Jirkovsky v. Jirkovsky*, 247 Neb. 141, 525 N.W.2d 615 (1995).

A verdict in a criminal case must be sustained if the evidence, viewed and construed most favorably to the State, is sufficient to support that verdict. Moreover, on such a claim, an appellate court will not set aside a guilty verdict in a criminal case where such verdict is supported by relevant evidence. *State v. Brunzo, ante* p. 176, 532 N.W.2d 296 (1995); *State v. Dyer*, 245 Neb. 385, 513 N.W.2d 316 (1994); *State v. Cook*, 244 Neb. 751, 509 N.W.2d 200 (1993).

A sentence imposed within statutory limits will not be disturbed on appeal absent an abuse of discretion by the trial court. *State v. Groff*, 247 Neb. 586, 529 N.W.2d 50 (1995); *State v. Campbell*, 247 Neb. 517, 527 N.W.2d 868 (1995); *State v. Secret*, 246 Neb. 1002, 524 N.W.2d 551 (1994).

## ANALYSIS

### MISTRIAL

In Cisneros' petition for further review, he argues that the Court of Appeals erred in refusing to determine the issue of whether the mistrial caused by prosecutorial misconduct barred his subsequent trial. The Court of Appeals did not address Cisneros' assignment of error regarding prosecutorial misconduct because he failed to raise the issue in the trial court. We agree.

First, Cisneros did not complain of prosecutorial misconduct when the juror's misconduct came to light. When an issue is raised for the first time on appeal, it is generally disregarded inasmuch as a lower court cannot commit error in resolving an issue never presented and submitted to it for disposition. *Jirkovsky, supra.*

Second, Cisneros did not request a mistrial "with prejudice" either in his written motion or at the hearing regarding the juror's misconduct. The trial judge immediately scheduled a new trial when he granted the mistrial. The case proceeded to trial some 5 months later without any argument from Cisneros that the mistrial due to juror misconduct barred a subsequent retrial. If a juror's misconduct prejudices the defendant, the defendant is entitled to a new trial, but is not necessarily entitled to a dismissal of the charges. *State v. Trammell,* 240 Neb. 724, 484 N.W.2d 263 (1992) (finding prejudice arising from juror misconduct, reversing conviction, and remanding for a new trial).

During oral arguments before this court, some discussion was entertained regarding double jeopardy. Certainly, if the constitutional provision against double jeopardy was being violated, we could consider Cisneros' argument regarding the prosecutorial misconduct under the doctrine of plain error. However, assuming arguendo that some prosecutorial misconduct did occur, the misconduct alleged in this case would not bar a new trial. See, *State v. Bostwick,* 222 Neb. 631, 385 N.W.2d 906 (1986); *State v. Munn,* 212 Neb. 265, 322 N.W.2d 429 (1982).

In *Bostwick,* we stated that prosecutorial misconduct, even if viewed as harassment or overreaching, does not bar retrial after

a defendant's motion for a mistrial is granted. A defendant's motion for a mistrial is a deliberate election on his part to forego his right to have his guilt or innocence determined before the first trier of fact. Absent intentional conduct on the part of the prosecutor to goad the defendant into moving for a mistrial, a defendant cannot raise the bar of double jeopardy to a second trial after succeeding in bringing the first trial to a close on his own motion. *State v. Bostwick, supra.*

Cisneros failed to complain of any alleged prosecutorial misconduct at trial and failed to ask for a mistrial with prejudice. We affirm the Court of Appeals' refusal to address his assignment of error.

### WITNESS TAMPERING

Cisneros was convicted of witness tampering, in violation of § 28-919, for offering Cavaness $20 in exchange for his promise not to report the incident to the police. A person commits the offense of witness tampering if, "believing that an official proceeding or investigation of a criminal matter is pending or about to be instituted, he attempts to induce or otherwise cause a witness, informant, or juror to: (a) Testify or inform falsely; or (b) Withhold any testimony, information, document, or thing[.]" § 28-919(1).

Cisneros argued to the Court of Appeals, and to this court in his petition for further review, that Cavaness was not a witness for the purpose of § 28-919 and that as a matter of law, the conviction cannot stand. Cisneros asserts that Cavaness had no firsthand knowledge of the alleged sexual assault and pandering charges and therefore would not have been able to testify to anything.

Witness tampering statutes cover the broad spectrum of all persons who pose a threat to an accused or a person who is about to be accused. *State v. McCoy*, 227 Neb 494, 418 N.W.2d 250 (1988). In *McCoy*, we held that a person who has knowledge of a relevant fact or occurrence sufficient to testify in respect to it is a witness for the purpose of § 28-919.

Cavaness' testimony was relevant evidence regarding the allegations. Cavaness testified that the alleged victim was shaking and crying when she returned from the pawnshop, and

such evidence would be corroborative and relevant to her state of mind. Cavaness testified Cisneros offered him money for not going to the police. That testimony is directly relevant because it indicates that Cisneros had identified Cavaness as a potential witness and sought to influence his behavior. See *State v. McCoy, supra.* Clearly, Cavaness was a witness for the purpose of § 28-919.

Cisneros asserts that there was insufficient evidence of witness tampering to sustain a conviction of witness tampering. The jury heard the testimony of Cavaness and the alleged victim regarding the $20 offer. Cisneros testified that he gave Cavaness the $20 "out of the goodness of his heart" after Cavaness complained that the amount Cisneros paid the alleged victim for the pawned ring was insufficient. In finding Cisneros guilty of witness tampering, the jury clearly determined that his testimony was not credible. Construing the evidence most favorably to the State, we find it is sufficient to support his conviction. See, *State v. Brunzo, ante* p. 176, 532 N.W.2d 296 (1995); *State v. Dyer*, 245 Neb. 385, 513 N.W.2d 316 (1994); *State v. Cook*, 244 Neb. 751, 509 N.W.2d 200 (1993).

## EXCESSIVE SENTENCE

Cisneros was convicted of a Class IV felony that carries a sentence of 0 to 5 years' incarceration. Cisneros was sentenced to 70 days in county jail, with work release. Cisneros asserts that the Court of Appeals improperly determined that the sentence was not an abuse of discretion by the district court.

A sentence imposed within the statutory limits will not be disturbed on appeal absent an abuse of discretion. *State v. Groff*, 247 Neb. 586, 529 N.W.2d 50 (1995); *State v. Campbell*, 247 Neb. 517, 527 N.W.2d 868 (1995); *State v. Secret*, 246 Neb. 1002, 524 N.W.2d 551 (1994). We find no abuse of discretion and affirm the sentence.

## JURY SELECTION

The district court for Dawes County conducts jury selection on one day for all of the trials scheduled during a monthly term. Neb. Rev. Stat. § 25-1632 (Reissue 1989). We have previously commented on Dawes County's practice of impaneling multiple juries in order to economize on jury expenses. *State v. Myers,*

190 Neb. 466, 209 N.W.2d 345 (1973). In *Myers*, we were forced to vacate two convictions because of problems with the Dawes County experimental method of impaneling multiple juries. We must again question the district court's wisdom of impaneling multiple juries in such manner.

Normally, trial to the jury follows immediately upon the impaneling and swearing of the jury. *State v. Myers, supra.* Potential jurors are randomly selected from a jury wheel, qualified, and assigned to a jury panel. Neb. Rev. Stat. § 25-1601 et seq. (Reissue 1989); Neb. Rev. Stat. § 29-2004 (Reissue 1989). Jurors for specific trials are selected from the jury panel as required. § 25-1629.04.

In *Myers*, we noted that Dawes County's practice of impaneling all of the juries required for trial during the month on one day at the beginning of the month creates a time interval between jury impanelment and trial. We commented that the recessed time interval created an opportunity for juror misconduct.

That is exactly what happened in this case. Between the time the jury was selected on August 2 and when the mistrial was declared on August 17, a juror had multiple conversations with witnesses. The misconduct we feared in *Myers* was realized in this case. It was only brought to the attention of the judicial system due to the persistence of the alleged victim's mother. It raises the question of whether a similar situation has gone undetected in the past. This method of selecting juries well in advance of trial is unacceptable. It maximizes the opportunity for jury misconduct. We now, therefore, by virtue of our constitutional power and duty, pursuant to Neb. Const. art. V, § 1, to exercise "general administrative authority over all courts in this state," direct all trial courts of this State to henceforth discontinue such system of advance jury selection.

## USE OF CONFIDENTIAL JUVENILE RECORDS

Although uncomplained of at trial or on appeal, we take plain notice of the use of confidential juvenile records to impeach the testimony of the alleged victim. Medical records gathered during juvenile court proceedings intended to protect the alleged victim as a juvenile in need were extensively used in the trial to

attack her character. Confidential juvenile records are generally inaccessible.

In 1990, while the alleged victim was still a minor, she was held to be a juvenile in need of assistance as described in Neb. Rev. Stat. § 43-247(3) (Reissue 1993). Under the direction of the Department of Social Services, she received medical care and counseling. In the course of her treatment, she and her mother shared confidential information with medical professionals. Records of her medical treatment were necessarily filed in the county court sitting as a juvenile court.

Neb. Rev. Stat. § 43-2,108(2) (Reissue 1993) states that the "medical, psychological, psychiatric, and social welfare reports and the records of juvenile probation officers as they relate to individual proceedings in the juvenile court shall not be open to inspection, without order of the court." Further, in all cases arising under § 43-247(3)(a), as was the alleged victim's proceeding before the juvenile court, the court shall grant access to the confidential record information only in three limited situations. § 43-2,108(3). None of those situations apply here.

In a motion for discovery dated June 30, 1993, Cisneros requested "[t]he results and reports of physical or mental examinations, specifically including any psychological tests, examinations, or reports of [the alleged victim] which were made within the last three years including any which may be in the County Court records . . . ." Cisneros asserted that the requested discovery was essential to his defense and was not requested primarily for the purpose of harassment. Cisneros did not state why the discovery was essential to his defense.

According to its journal entry of July 6, the district court ordered that defense counsel have access to the alleged victim's juvenile court records if the county attorney had access to the files. The county attorney does have access to juvenile court records in some circumstances not present here. See, e.g., § 43-2,108(3).

A trial court has discretion in the matter of discovery where material is sought for impeachment purposes. *State v. Trammell,* 231 Neb. 137, 435 N.W.2d 197 (1989). However, a witness may assert that the information sought is privileged or protected and resist discovery. *Trammell, supra; State v. Beach,* 215 Neb. 213,

337 N.W.2d 772 (1983).

Section 43-2,108(2) and (3) provided ample support for the county attorney to resist Cisneros' motion for discovery of the alleged victim's juvenile records. Cisneros' motion lacked specific facts to create any reasonable grounds to believe that the failure to produce the information would impair his right to confront the alleged victim.

In *Beach*, the defendant sought the juvenile records of the alleged victim in order to introduce her prior juvenile adjudications for impeachment purposes. The trial court precluded the use of any prior juvenile adjudications. The defendant claimed he was denied his right to effectively confront and cross-examine witnesses. We noted that *Davis v. Alaska*, 415 U.S. 308, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974), provides that a criminal defendant must be allowed to introduce evidence that a witness for the state who implicated and identified the defendant had a prior juvenile record in order to show that the witness' testimony was somehow coerced and motivated by the state's threat to revoke his probation. However, in *Beach*, we held that *Davis* did not permit the defense to use the victim's juvenile records in order to cast her as a dishonest juvenile offender in front of the jury.

On July 23, 1993, the pretrial conference was had. At that time, the county attorney had not produced the requested records. Counsel and the court discussed whether the alleged victim's medical and juvenile court records were subject to discovery pursuant to *State v. Trammell, supra*. No mention was made of the statutory confidentiality of juvenile court records.

*Trammell* sets out a procedure to be followed when a defendant seeks privileged information about the victim for impeachment purposes. If the victim refuses to waive the privilege, the trial court can order a hearing. At the hearing, the defendant must establish that his right of confrontation is likely to be impaired if he does not have access to the information. If the defendant meets this burden, and with the victim's consent, the court can conduct an in-camera inspection of the confidential information. If necessary, the court can then turn over to the defendant any relevant material for the purpose of cross-examination. If the victim refuses to consent to the

in–camera inspection and/or subsequent release of relevant information, then the court may be obliged to strike the victim's direct testimony.

The county attorney did not assert that the alleged victim's juvenile records were not open to inspection pursuant to § 43–2,108(2) and (3) and *State v. Beach, supra.* The county attorney did not invoke the protections afforded by *Trammell.* At the suggestion of the trial judge, the county attorney without objection contacted the alleged victim and obtained her permission to turn the sealed records over to the defense.

The fact the records were made available does not necessarily mean they are admissible. However, using information from the alleged victim's juvenile court records, the defense cross–examined her and her mother using information obtained from the juvenile records. The resulting record leads one to question who was on trial, the alleged victim or Cisneros.

Few if any objections were made to this line of questioning. For example, during the alleged victim's testimony, the county attorney objected when the defense attempted to question her regarding a hospitalization some 2 years prior to the alleged assault. The court sustained the county attorney's relevance objection. However, when the defense called the therapist who treated the alleged victim during that hospitalization, no objection was made.

The use of such records in this trial tarnished the proceedings. The trial record reveals the judge's frustration. We likewise do not wish to allow the abuses apparent in the record to pass without comment.

## CONCLUSION

The issues of whether or not Cisneros' mistrial should have been granted "with prejudice" and whether there was any alleged prosecutorial misconduct were not presented to the trial court; therefore, they have no merit on appeal. Sufficient evidence exists to sustain Cisneros' conviction of witness tampering. The accompanying sentence was not excessive. We therefore affirm Cisneros' conviction and sentence.

AFFIRMED.

CONNOLLY, J., concurring in the result.

I concur in the result reached by the majority. However, I write separately to express my disagreement with what I consider to be an advisory opinion regarding the discovery of the alleged victim's confidential medical records. The issue of the confidentiality of the alleged victim's records was not raised in the trial court and was not briefed or argued in front of the Court of Appeals or this court. The majority took "plain notice" of the juvenile records issue. I disagree with the majority's consideration of a "plain notice" doctrine. I am not familiar with the "plain notice" doctrine, but I do know that the confidentiality issue is neither related to any assignment of error nor germane to this decision. Since I am uncertain of the full import of this issue, I limit my concurrence.

CAPORALE and WRIGHT, JJ., join in this concurrence.