STATE OF NEBRASKA, APPELLEE, V.
KEVIN B. HARRIS, APPELLANT.
652 N.W.2d 585

Filed November 1, 2002.   No. S-01-1123.

Thomas C. Riley, Douglas County Public Defender, and Mikki E. Campbell for appellant.

Don Stenberg, Attorney General, and Susan J. Gustafson for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

CONNOLLY, J.

A jury convicted the appellant, Kevin B. Harris, of shoplifting. Harris contends that he was denied a fair trial because one of the jurors failed to disclose on a jury form that she was a convicted felon. We determine that the juror was biased, and we reverse, and remand for a new trial.

## BACKGROUND

On August 30, 2000, Patrick Maly, a grocery store manager, while watching through a surveillance camera, saw a man pick up two bottles of vodka in the liquor department. He then observed the man walk to the back of the store and give the bottles to another person, whom Maly later identified as Harris. According to Maly, Harris put the bottles into a green bag and went to the exit of the store without going through the checkout stands.

Maly stopped Harris at the exit door and asked about the bottles. Harris denied that he had any bottles and continued toward the door. A struggle ensued between Maly, Harris, and another store manager, Robert Flood. Maly and Flood handcuffed Harris, and the bag fell to the floor. According to Maly, the man who initially took the vodka bottles appeared, took the bag, ran from the store, and drove away. The man was never identified or apprehended.

Flood testified that like Maly, he saw a man carrying two bottles of vodka toward the back of the store. He described the

struggle with Harris and stated that when Harris dropped the bag, there was a sound like bottles clinking together.

The record reflects inconsistent testimony whether the incident was videotaped. Maly stated that a videotape recording of the incident had been taped over, and Flood stated that the tape never recorded any video. The record also reflects inconsistent testimony about information that was provided to the investigating officers.

Harris did not present any evidence. At the end of the State's case, he moved for a dismissal of the case because the State had failed to make a prima facie case. The motion was overruled. The jury found Harris guilty. Harris moved for a new trial, alleging, among other things, that the trial court erred in overruling his motion for a directed verdict and that juror misconduct occurred.

### JUROR QUALIFICATION FORM

At the hearing on the motion for a new trial, Harris entered into evidence a juror qualification form that Pamela Dortch, one of the jurors, filled out as part of the jury duty process. The form states:

> YOU ARE HEREBY REQUIRED, UNDER PENALTY OF LAW, to answer all the questions listed below and return this notice properly signed to the Jury Commissioner within TEN DAYS from the date of receipt. ANY PERSON WHO KNOWINGLY FAILS TO COMPLETE AND RETURN OR WHO WILLFULLY MISREPRESENTS A MATERIAL FACT ON THIS FORM FOR THE PURPOSE OF AVOIDING OR SECURING SERVICE AS A JUROR SHALL BE GUILTY OF CONTEMPT OF COURT.

Question No. 7 on the form asks, "Have you ever been convicted of a criminal offense punishable by imprisonment in the Nebraska Penal and Correctional Complex?" Dortch answered no to this question. Dortch left blank the questions asking for her county of residence and date of birth. On a question stating that people over age 65 may be exempt from jury duty, Dortch checked a box stating that her preference was to serve as a juror. Also entered into evidence was a district court journal entry showing that in 1990, Dortch was convicted of possession with intent to deliver a controlled substance and was sentenced to 1 to 3 years in prison.

## DORTCH'S TESTIMONY AT MOTION FOR NEW TRIAL

Dortch testified that she had been convicted in a criminal action and that she had not been pardoned. When asked whether she knew she had a felony conviction when she filled out the juror qualification form, Dortch stated that the conviction was years ago, that she thought she had put it behind her, and that she thought it was all erased. Dortch later admitted that she was also convicted of shoplifting in 1996 and spent some time in jail as a result.

When asked whether she remembered voir dire in Harris' case, Dortch stated that she felt kind of ill that day and was trying to stay awake. She did not remember the potential jurors' being asked questions about convictions or police contacts, but admitted that she might not have been paying full attention that day. She also did not remember the jurors' being asked whether anyone had been convicted of shoplifting. She further did not remember being asked whether she had any medical conditions that would keep her from sitting on a jury. She stated that she was very ill, that she was kind of sleepy, and that she dozed off a couple of times that day.

Dortch also testified that she felt ill and sleepy through the entire trial. She admitted that she did not focus during the trial and dozed off a few times. She said that she did miss things during the trial because she was ill and sleepy.

Dortch stated that she had previously met Alicia Gully, Harris' ex-wife, at a barbecue. Dortch stated that she was unaware that Gully had been married to Harris. She did not remember any questions at voir dire about whether anyone knew people who were connected to Harris. The voir dire of the jury is not in the record.

After the hearing, the trial court stated that it did not find Dortch's statements about her condition and illness during trial to be credible. The court stated, "I think [the statements] are made to justify the fact that she didn't know what she was doing and to avoid responsibility for what is under way at this time, so I don't find that particularly credible evidence in this matter." The court later found that Dortch intentionally falsified her statements and misled the court by failing to disclose that she had been convicted of a crime punishable by imprisonment. The court stated:

There's no question that she knew about it and she intended to say that she hadn't been convicted of it. She notes that she wishes to serve as a juror in this case, and so it was an intentional—it was intentionally done to mislead those involved in the process.

The court also found, however, that there was no evidence that the jury panel was actually asked about prior convictions at voir dire or that Harris relied on the statements in the juror qualification form. The court concluded that a party who fails to inquire into an issue on voir dire waives any objections about a juror that are made after trial. Because of the lack of evidence about voir dire, the court determined that Harris waived any objection he had to Dortch and overruled Harris' motion for a new trial.

## ASSIGNMENTS OF ERROR

Harris assigns, rephrased, that the district court erred in failing to sustain his motion for a new trial on the grounds that (1) Dortch failed to disclose that she was a convicted felon, (2) Dortch stated that she was not paying attention at voir dire and trial, and (3) there was insufficient evidence to support a guilty verdict.

## STANDARD OF REVIEW

A motion for new trial is addressed to the discretion of the trial court, whose decision will be upheld in the absence of an abuse of discretion. *State v. Jackson*, 264 Neb. 420, 648 N.W.2d 282 (2002).

## ANALYSIS

Harris contends that he was denied a fair trial because Dortch was ineligible to serve as a juror. The State, however, contends that Harris waived any objection he had to Dortch by failing to object during voir dire.

### STATUTES INVOLVED

Because we apply statutory law when discussing the issues of both waiver and fair trial, we first provide the relevant statutory sections. Neb. Rev. Stat. § 25-1601(1) (Reissue 1995) provides in part, "Persons disqualified to serve as either grand or petit jurors are: . . . persons who have been convicted of a criminal offense punishable by imprisonment in a Department of Correctional

Services adult correctional facility, when such conviction has not been set aside or a pardon issued." Neb. Rev. Stat. § 29-112 (Reissue 1995) also provides that any person sentenced to be punished for any felony, when the sentence has not been reversed or annulled, is deemed incompetent to be a juror. Neb. Rev. Stat. § 25-1609 (Reissue 1995) provides that it shall be a sufficient cause of challenge of a juror if he or she is disqualified under § 25-1601. Neb. Rev. Stat. § 25-1629 (Reissue 1995) requires that a juror qualification form be sent to potential jurors and requires that a juror who is disqualified under § 25-1601 be stricken from the proposed juror list.

## WAIVER

Relying on *Turley v. State*, 74 Neb. 471, 104 N.W. 934 (1905), the State argues that Harris waived any objection that he had about Dortch because he failed to raise the issue during voir dire. We disagree.

In *Turley*, it was discovered after trial that a juror had formerly been convicted of a felony. We held that the issue was waived and stated:

> Great latitude is allowed the defendant upon the *voir dire* examination to enable him to ascertain whether there is any ground for objecting to the juror. He cannot waive an objection of this nature, and, after taking his chances of an acquittal before the jury selected, insist upon an objection which he should have raised upon the impaneling of the jury, and, if he makes no effort to ascertain whether a juror offered is qualified to sit, he must be held to have waived the objection.

*Id*. at 476, 104 N.W. at 936.

*Turley* holds that when a defendant, through diligence, is able to discover a reason to challenge a juror, the objection to the juror must be made at the time of voir dire. *Turley* does not stand for the proposition that an objection to a juror is waived when the juror has concealed information and the defendant through diligence cannot discover the information before trial. A defendant cannot waive something that has been concealed. *People v. Green*, 31 Cal. App. 4th 1001, 38 Cal. Rptr. 2d 401 (1995), *reversed on other grounds, Green v. White*, 232 F.3d 671 (9th Cir. 2000).

Under § 25-1629, a juror qualification form must be sent to potential jurors and any juror who is disqualified under § 25-1601 must be stricken from the proposed juror list. Attorneys must be able to rely on a statutory scheme intended to prevent disqualified jurors from ever being placed in the jury pool. Attorneys should not be required to ask again at voir dire about past convictions that would disqualify a juror when jurors have already filled out forms addressing the issue.

Here, Dortch gave false information on her juror qualification form. The record shows that she concealed information during voir dire. A defendant does not waive an objection to a juror when the juror has concealed the information that is the subject of the objection. Nothing in the record suggests that Harris could have discovered the information before trial. We conclude that the issue has not been waived.

### CONVICTION OF CRIME AND JUROR BIAS

Harris contends that he was denied a fair trial because Dortch should have been disqualified as a juror. A criminal defendant claiming jury misconduct bears the burden of proving, by a preponderance of the evidence, (1) the existence of jury misconduct and (2) that the misconduct was prejudicial to the extent that the defendant was denied a fair trial. See *State v. Anderson*, 252 Neb. 675, 564 N.W.2d 581 (1997). Proof of mere indiscretion in the conduct of a juror is not sufficient to avoid a verdict unless the proof establishes that his conduct was of such character that prejudice may be presumed. *Ellis v. Far-Mar-Co*, 215 Neb. 736, 340 N.W.2d 423 (1983). When a juror deliberately conceals information, courts address the issue in terms of juror bias. See, e.g., *U.S. v. Bishop*, 264 F.3d 535 (5th Cir. 2001); *Green v. White, supra*; *McCoy v. Goldston*, 652 F.2d 654 (6th Cir. 1981). See, also, *Dyer v. Calderon*, 151 F.3d 970 (9th Cir. 1998) (en banc) (juror concealed fact that family member was crime victim).

Some courts hold that when a juror deliberately concealed information or purposely gave an incorrect answer during voir dire, bias is presumed, prejudice is presumed, and a new trial must be granted. See, e.g., *McCoy v. Goldston, supra*; *Fleming v. State*, 687 So. 2d 146 (Miss. 1997). The Fifth and Ninth Circuit Courts

of Appeals have specifically addressed the issue whether bias is presumed when a juror conceals that he or she has been convicted of a crime. *U.S. v. Bishop, supra*; *Green v. White, supra*; *Dyer v. Calderon, supra*.

In *Dyer*, the Ninth Circuit Court of Appeals noted that the Sixth Amendment to the U.S. Constitution guarantees criminal defendants a verdict by impartial and indifferent jurors. The bias or prejudice of a juror violates a defendant's right to a fair trial. The court further noted that the presence of a biased juror cannot be harmless and that the error requires a new trial without a showing of actual prejudice. *Id.*, citing *Tumey v. Ohio*, 273 U.S. 510, 47 S. Ct. 437, 71 L. Ed. 749 (1927). The Ninth Circuit applied these concepts to a juror's concealment of his commission of a crime. *Green v. White*, 232 F.3d 671 (9th Cir. 2000).

In *Green*, a juror failed to disclose on a jury form that he had been convicted of a felony for passing bad checks, which would statutorily disqualify him from serving on a jury. The juror also failed to disclose during voir dire other encounters with the law, including a conviction for assault and an arrest for robbery. During deliberations, a question arose about the juror's impartiality because he stated that he knew the defendant was guilty the minute he saw him and made a reference to a desire to shoot the defendant. The Ninth Circuit determined that the juror deliberately lied and inferred that the juror had a desire to serve on the jury. The court then noted that while a court might be unable to say exactly what motive a juror would have to stay on a jury, it believed that " '[t]he individual who lies in order to improve his chances of serving has too much stake in the matter to be considered indifferent.' " *Id.* at 677, quoting *Dyer v. Calderon, supra*. The court then stated:

> "A juror . . . who lies materially and repeatedly in response to legitimate inquiries about her background introduces destructive uncertainties into the process. . . . [A] perjured juror is unfit to serve even in the absence of . . . vindictive bias. If a juror treats with contempt the court's admonition to answer voir dire questions truthfully, she can be expected to treat her responsibilities as a juror—to listen to the evidence, not to consider extrinsic facts, to follow the judge's instructions—with equal scorn. Moreover, a juror

who tells major lies creates a serious conundrum for the fact-finding process. How can someone who herself does not comply with the duty to tell the truth stand in judgment of other people's veracity? Having committed perjury, she may believe that the witnesses also feel no obligation to tell the truth and decide the case based on her prejudices rather than the testimony."

*Green v. White*, 232 F.3d at 677, quoting *Dyer v. Calderon*, 151 F.3d 970 (9th Cir. 1998) (en banc). Finding that the juror's pattern of lies and misbehavior created "destructive uncertainties," the Ninth Circuit determined that the juror was biased and instructed the trial court to grant the defendant's request for a writ of habeas corpus. *Green v. White*, 232 F.3d at 678. See, also, *State v. Cho*, 108 Wash. App. 315, 30 P.3d 496 (2001) (bias presumed when juror withholds information to increase likelihood of being seated on jury); *State v. Akins*, 867 S.W.2d 350 (Tenn. Crim. App. 1993) (when juror willfully conceals or fails to disclose information during voir dire which reflects on that juror's impartiality, presumption of prejudice arises).

The Fifth Circuit in *U.S. v. Bishop*, 264 F.3d 535 (5th Cir. 2001), declined to adopt a per se presumption of bias except in extreme circumstances. In *Bishop*, a juror had pled guilty to a charge of embezzlement and the adjudication of the matter was deferred for 10 years under a state statute that allows courts to defer adjudication and place a defendant under community supervision. The juror answered no to questions on a juror questionnaire about whether she had ever been convicted of, or charged with, a crime. She also did not respond to voir dire questions about whether any potential jurors had been involved in criminal matters. She explained that she did not reveal the charge of embezzlement because her lawyer told her that because the adjudication of the charge had been deferred, she did not have to tell anyone about it.

The Fifth Circuit noted that motivations of jurors for concealing information can vary and that only those that truly affect a juror's impartiality can affect the fairness of a trial. Thus, the court determined that a felon's serving as a juror is not an automatic basis for a new trial. Instead, the defendant must demonstrate that the juror was actually biased or fundamentally

incompetent. *Id.* The court recognized that in the majority of situations, the party seeking a new trial must demonstrate bias through admission or factual proof. The court stated, however, that bias will be implied or presumed in extreme circumstances. The court also stated that "[i]ndicia of partiality are particularly problematic when coupled with the juror's lies or other efforts to hide a potential disqualification." *Id.* at 554.

The court discussed *Green v. White,* 232 F.3d 671 (9th Cir. 2000), and distinguished it, stating:

> [I]naccurate responses to voir dire questions are excused when caused by inattention or when a query does not elicit the specific information relevant to the juror's disqualification. . . . Failure to disclose a conviction due to a mistaken, but honest belief the record was expunged, or due to embarrassment, also does not suggest bias. . . . Even when a juror's non-disclosure is dishonest as opposed to mistaken, his behavior is not a basis for reversal unless the dishonesty appears to be rooted in bias or prejudice.

*U.S. v. Bishop,* 264 F.3d at 555. The court then determined that the juror would not be presumed to be biased. Unlike in *Green,* there was no suggestion in *Bishop* that the juror especially desired to serve on the jury, the juror's motivations appeared to be purely personal, and there were no other troubling circumstances involved. The *Bishop* court affirmed the defendant's convictions.

Here, we need not decide whether to adopt an automatic presumed-bias rule when a juror is statutorily disqualified, because under either an automatic or a conditional rule, Harris is entitled to a new trial.

■ Dortch did not merely lie on her juror qualification form. Although her age is not apparent from the record, Dortch also marked a box on the juror qualification form for people over age 65, indicating that she would like to serve on a jury. The trial judge made specific findings of fact that Dortch wished to serve as a juror in the case and that she intentionally lied to mislead those involved in the process. Further, the record shows that Dortch also failed to disclose that she had been convicted of shoplifting, the same crime that Harris was charged with. Dortch stated that she did not remember questions asked at voir dire about whether anyone had been convicted of shoplifting, because

she was ill and sleepy. Although the voir dire is not in the record, the trial judge specifically found that Dortch's testimony about her illness and sleepiness was not credible. Finally, there was an allegation that Dortch had met Harris' ex-wife, Gully, although Dortch stated that she did not know Gully was Harris' ex-wife. Under these circumstances, there is more than mere juror dishonesty because of mistake or embarrassment. Instead, the inference is that Dortch deliberately lied with the motivation of being placed on the jury. Under either an automatic or a conditional rule of presumption, a juror is presumed to be biased when he or she conceals information for the purpose of being placed on the jury. Once bias is presumed, prejudice is presumed as well and the error cannot be harmless. We conclude that Harris is entitled to a new trial.

### SUFFICIENCY OF EVIDENCE

Harris contends that there was insufficient evidence to convict him. He contends that there was no videotape of the crime, that there was inconsistent evidence, and that the State's witnesses lacked credibility. Witnesses testified that they saw Harris take the bottles of vodka and attempt to leave the store. The credibility of the witnesses is a question for the jury. This assignment of error is without merit.

## CONCLUSION

We conclude that there was sufficient evidence to convict Harris. But, because there is an inference that Dortch concealed information specifically to secure a place on the jury and because of other irregularities in her behavior, we conclude that she is presumed to have been biased. As a result, prejudice is presumed and Harris is entitled to a new trial.

REVERSED AND REMANDED FOR A NEW TRIAL.