Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
03/23/2018 08:14 AM CDT

State of Nebraska, appellee, v.
Jeffrey A. Huff, appellant,
___ N.W.2d ___

Filed December 29, 2017.    No. S-15-897.

1. **Trial: Juries: Appeal and Error.** The retention or rejection of a juror
   is a matter of discretion for the trial court. This rule applies both to the
   issue of whether a venireperson should be removed for cause and to the
   situation involving the retention of a juror after the commencement of
   trial. Thus, the standard of review in a case involving discharge of a
   juror is whether the trial court abused its discretion.
2. **Motions for Mistrial: Appeal and Error.** Decisions regarding motions
   for mistrial are directed to the discretion of the trial court, and will be
   upheld in the absence of an abuse of discretion.
3. **Criminal Law: Juror Misconduct: Proof.** Where the jury misconduct
   in a criminal case involves juror behavior only, the burden to establish
   prejudice rests on the party claiming misconduct.
4. **Juror Qualifications: Waiver.** A party who fails to challenge the jurors
   for disqualification and passes the jurors for cause waives any objection
   to their selection.
5. **Juror Qualifications.** When a party to a criminal case, through dili-
   gence, is able to discover a reason to challenge a juror, the objection to
   the juror must be made at the time of voir dire.
6. **Juror Qualifications: Juror Misconduct: Waiver.** A party does not
   waive an objection to a juror when the juror has concealed the informa-
   tion that is the subject of the objection.
7. **Trial: Juror Qualifications: Juror Misconduct.** The motives for con-
   cealing information during voir dire may vary, but only those reasons
   that affect a juror's impartiality can truly be said to affect the fairness of
   a trial.
8. **Trial: Juries.** Where a juror indicates that he or she is physically
   incapable of proceeding, such as in the case of the juror's illness or
   incapacity, examination of the juror before discharging him or her is not
   required and may not be feasible.

9. \_\_\_\_: \_\_\_\_. Whether a juror paid attention to the trial in order to intelligently comprehend the proceeding is generally left to the discretion of the trial judge.

10. **Trial: Juries: Appeal and Error.** A trial court's decision to remove a juror and substitute an alternate is reviewed for an abuse of discretion.

11. **Trial: Juries.** A court's decision is an abuse of discretion if the decision results in bias or prejudice to the defendant, and prejudice includes the discharge of a juror without factual support or for a legally irrelevant reason.

Petition for further review from the Court of Appeals, Moore, Chief Judge, and Riedmann and Bishop, Judges, on appeal thereto from the District Court for Lancaster County, Robert R. Otte, Judge. Judgment of Court of Appeals affirmed.

Joseph D. Nigro, Lancaster County Public Defender, and Robert G. Hays for appellant.

Douglas J. Peterson, Attorney General, and Kimberly A. Klein for appellee.

Heavican, C.J., Wright, Miller-Lerman, Cassel, Stacy, Kelch, and Funke, JJ.

Per Curiam.

Jeffrey A. Huff was convicted of first degree sexual assault following a jury trial in the district court for Lancaster County. The Nebraska Court of Appeals affirmed his conviction and sentence.[1] Huff petitioned for further review, specifically challenging the order of the district court granting the State's motion to discharge a juror, M.F., after the parties had rested their cases and before the jury began deliberations. We affirm.

## I. BACKGROUND

On April 15, 2015, the State filed an information charging Huff with first degree sexual assault. He was ultimately

---

[1] *State v. Huff*, 24 Neb. App. 551, 891 N.W.2d 709 (2017).

convicted by a jury. The errors raised in Huff's petition for further review concern only a juror at his trial, and not the underlying charge. We therefore limit our recitation of the facts to those pertinent to our analysis.

Jury selection for Huff's trial took place on August 10, 2015. After voir dire, both parties passed the panel for cause and then exercised their peremptory challenges. Twelve regular jurors and one alternate juror were sworn in and then excused until the following morning.

The Court of Appeals summarized the relevant events that occurred next:

> When trial reconvened on August 11, 2015, one juror, M.F., communicated that he was anxious about serving on the jury and was brought in to discuss the issue with the court and parties. M.F. explained that due to his upbringing, which included crime, gangs, drugs, and domestic assault, he did not think he was "suitable for [jury service] at all." M.F. was questioned as to whether he could listen to the evidence and jury instructions and be fair and impartial. He initially expressed that he did not think he would "be fair due to" his background and experiences. He declined to state whether he thought he would be biased toward the State or toward Huff and indicated only that he felt he was not fit for jury service. Upon further questioning, however, M.F. agreed to follow the law and stated that he believed he could follow the instructions given, place his history and background aside, and fairly and impartially make a decision based on the evidence.
>
> The State then moved to strike M.F. from the jury for cause, a motion to which Huff objected. The district court denied the motion at that point, observing that M.F. had taken the oath administered to the jury and opining that he perhaps merely experienced anxiety about jury service during the overnight break. The court indicated,

however, that "we [could] keep an eye on that issue" as the trial progressed.[2]

The trial then proceeded. After both parties rested and the jury had been excused for the day, the court expressed concern as to whether M.F. had been paying attention during trial. Specifically, the court advised the parties that it had not seen M.F. taking any notes during the trial or otherwise paying attention and stated that "[i]t wouldn't appear to me that [M.F.] would be paying attention as intently as some of the other jurors."

Later that day, at a hearing outside the presence of the jury, the State offered the transcript of the colloquy with M.F. from the first day of trial and a printout of M.F.'s criminal record. The printout showed in excess of 30 misdemeanor convictions M.F. had failed to disclose on his jury questionnaire. Both documents were received into evidence by the court. The State then moved to "strike" M.F. for cause, arguing M.F. could not be fair and unbiased.

The State argued that in the jury questionnaire, M.F. had said he had never been convicted or charged with a crime with a possible penalty of 1 year or more in prison, had never been convicted or charged with a crime involving a motor vehicle other than speeding, and had never been convicted or charged with a crime other than traffic. The State conceded that it could have exercised "a little bit more due diligence" before jury selection. Nevertheless, the State argued that M.F.'s criminal record showed that he had not been "forthcoming when he filled out his jury questionnaire" and that M.F.'s "deceit to the court" was a basis to strike him for cause. The record shows that M.F. was not statutorily disqualified from jury service.

Huff objected to the State's motion to remove M.F. from the jury. Huff argued that the State had not sought to strike M.F. for cause during jury selection and had not used its

---

[2] *Id.* at 552-53, 891 N.W.2d at 712.

peremptory strike on M.F. prior to his being sworn in and, instead, the State waited until after he had been sworn in. Huff generally contended that nothing had occurred since M.F. had been sworn in that would justify his being discharged.

After listening to the parties' arguments, the court stated that it was "going to sustain the State's motion" and "strike" or discharge M.F. The court reasoned M.F. had not been forthcoming about his criminal history in his jury questionnaire. It also stated that it had observed M.F.'s "apparent disinterest in the trial as it was going along." In this respect, the court noted that M.F. "didn't take a note from the start of the case through the end of evidence." The court also stated that "overall, if he would have been a student in a third grade class, you would have thought that he didn't pay attention to anything that had gone on that particular hour." The court also referred to M.F.'s initial reluctance to serve as a juror.

Huff argued that before the court could discharge M.F., it was "incumbent upon the court to question him." However, the court determined that it had sufficient good cause to discharge M.F. and chose not to examine him.

The next day, prior to bringing the jury into the courtroom, the court heard argument on Huff's motion to vacate its ruling to strike M.F. Huff alternatively moved to "strike" three additional jurors and presented exhibits, including criminal histories and jury questionnaires, which he argued showed that the three had also been dishonest in their questionnaire responses regarding their criminal histories. The court overruled Huff's motions. The court thereafter called M.F. into the courtroom without again examining him and without the other jurors present and informed him that the court had "made a determination to discharge [him] as a juror."

Huff moved for a mistrial based in part on the court's discharge of M.F. The court overruled Huff's motion for mistrial, and the alternate juror was placed on the jury. The jury returned a guilty verdict against Huff, and the court sentenced him to 12 to 20 years' imprisonment.

Huff appealed, arguing the district court erred in granting the State's motion to "strike" M.F. from the jury and in denying his motion for mistrial. The Court of Appeals rejected Huff's claims and affirmed his conviction and sentence.[3]

In doing so, the Court of Appeals held that the district court actually discharged M.F., and did not "strike" him. It reasoned that pursuant to Neb. Rev. Stat. §§ 29-2006 and 29-2007 (Reissue 2016), a "strike" or challenge to a potential juror for cause "shall be made before the jury is sworn, and not afterward," and thus it was imprecise to say M.F. was struck.[4] The court determined that the district court's dismissal of M.F. was more properly characterized as a "discharge" under Neb. Rev. Stat. § 29-2004(2) (Reissue 2016). Section 29-2004(2) refers to the discharge of a juror who has already been seated and provides for replacing a juror who is discharged during trial with an alternate juror.

Huff argued the State waived its challenge to M.F. based on the jury questionnaire by not raising the issue earlier and that in any event, the district court erred when it discharged M.F. without questioning him to ascertain whether he was subject to discharge for cause. Huff relied, in part, on *State v. Myers*,[5] in which we held that a party who fails to challenge a juror for cause waives any objection to the juror's selection and that if grounds for a challenge for cause arise out of matters occurring after the jury is sworn, "it is the duty of the court to hear evidence and examine the jurors and determine whether any juror might be subject to disqualification for cause."

The Court of Appeals rejected Huff's arguments, reasoning that because § 29-2004(2) applied, rather than § 29-2006, "the State's objection to M.F. as a juror was not waived and the duty to question M.F. prior to discharging him from the

---

[3] *Huff, supra* note 1.

[4] *Id.* at 555, 891 N.W.2d at 714.

[5] *State v. Myers*, 190 Neb. 466, 472, 209 N.W.2d 345, 349 (1973).

jury did not arise."[6] The Court of Appeals concluded that the district court did not abuse its discretion when it granted the State's motion to discharge M.F.

The Court of Appeals determined that the same reasoning supported a conclusion that the district court did not abuse its discretion when it overruled Huff's motion for mistrial. We granted Huff's petition for further review.

## II. ASSIGNMENTS OF ERROR

Huff claims, summarized and restated, that the district court abused its discretion in granting the State's motion to discharge and denying Huff's motion for mistrial.

## III. STANDARD OF REVIEW

[1] The retention or rejection of a juror is a matter of discretion for the trial court.[7] This rule applies both to the issue of whether a venireperson should be removed for cause and to the situation involving the retention of a juror after the commencement of trial.[8] Thus, the standard of review in a case involving discharge of a juror is whether the trial court abused its discretion.[9]

[2] Decisions regarding motions for mistrial are directed to the discretion of the trial court, and will be upheld in the absence of an abuse of discretion.[10]

## IV. ANALYSIS

### 1. REMOVAL OF JURORS

Nebraska statutes provide for the removal of jurors both before and after the jury is sworn. This case illustrates the difference between disqualifying a juror for cause before the juror

---

[6] *Huff, supra* note 1, 24 Neb. App. at 557, 891 N.W.2d at 714.

[7] *State v. Hilding*, 278 Neb. 115, 769 N.W.2d 326 (2009).

[8] *Id.*

[9] See *State v. Krutilek*, 254 Neb. 11, 573 N.W.2d 771 (1998).

[10] *State v. Grant*, 293 Neb. 163, 876 N.W.2d 639 (2016).

has been sworn (pursuant to § 29-2006) and discharging a juror after he or she has been sworn (pursuant to § 29-2004(2)). We agree with the Court of Appeals that in this case, discharge under § 29-2004(2) is the proper analysis. To the extent the district court and the parties referred to "striking" M.F. from the jury panel, the terminology was imprecise.

Section 29-2004(2) provides that "before the final submission of the cause a regular juror dies or is discharged, the court shall order the alternate juror . . . to take his or her place in the jury box." This statute does not specify the reasons for which a regular juror might be discharged or that the reason for the discharge must be based solely on one of the causes set forth in § 29-2006.[11]

## 2. Discharge of M.F. From Jury Panel

[3] Where the jury misconduct in a criminal case involves juror behavior only, the burden to establish prejudice rests on the party claiming the misconduct.[12] Because the State sought the discharge of M.F., it had the burden to show that M.F. was biased, engaged in misconduct, or was otherwise unable to continue to serve.

### (a) Waiver

[4] Generally, a party who fails to challenge the jurors for disqualification and passes the jurors for cause waives any objection to their selection.[13] For example, in *Turley v. State*,[14] it was discovered after the jury returned a verdict that one of the jurors had a felony conviction. Under those circumstances, we held that the issue of the juror's qualification to serve was waived, stating:

---

[11] See *Hilding, supra* note 7.

[12] *State v. Thomas*, 262 Neb. 985, 637 N.W.2d 632 (2002).

[13] *Myers, supra* note 5.

[14] *Turley v. State*, 74 Neb. 471, 104 N.W. 934 (1905).

Great latitude is allowed the defendant upon the *voir dire* examination to enable him to ascertain whether there is any ground for objecting to the juror. He cannot waive an objection of this nature, and, after taking his chances of an acquittal before the jury selected, insist upon an objection which he should have raised upon the impaneling of the jury, and, if he makes no effort to ascertain whether a juror offered is qualified to sit, he must be held to have waived the objection.[15]

[5,6] Later, in *State v. Harris*,[16] we summarized the *Turley* holding to be "when a defendant, through diligence, is able to discover a reason to challenge a juror, the objection to the juror must be made at the time of voir dire." We went on to explain that "*Turley* does not stand for the proposition that an objection to a juror is waived when the juror has concealed information and the defendant through diligence cannot discover the information before trial."[17]

In *Harris*, upon examination, it was learned that a juror intentionally failed to disclose she had been convicted of a crime that would have disqualified her from serving as a juror under Neb. Rev. Stat. § 25-1601(1) (Reissue 2016) and deemed her incompetent to be a juror under Neb. Rev. Stat. § 29-112 (Reissue 2016). The juror concealed information during voir dire, and it was ultimately determined that she deliberately lied with the motivation of being placed on the jury.[18] The juror's criminal record was discovered after the jury returned a verdict, and the discovery prompted the defendant to move for a new trial on the basis of juror misconduct. Under those circumstances, we held that a defendant does not waive an objection to a juror when the juror has

---

[15] *Id.* at 476, 104 N.W. at 936.

[16] *State v. Harris*, 264 Neb. 856, 861, 652 N.W.2d 585, 589 (2002).

[17] *Id.*

[18] See *Harris, supra* note 16.

concealed the information that is the subject of the objection.[19] We noted the juror had actively concealed her criminal history on her juror questionnaire and that nothing in the record suggested the defendant could have discovered the concealment before trial. We reasoned:

> Attorneys must be able to rely on a statutory scheme intended to prevent disqualified jurors from ever being placed in the jury pool. Attorneys should not be required to ask again at voir dire about past convictions that would disqualify a juror when jurors have already filled out forms addressing the issue.[20]

In the instant case, after the jury had been sworn in, M.F. advised the court that he was reluctant to serve, based upon his upbringing and his background. The court then questioned M.F. and determined that M.F. could be fair and impartial. After the close of evidence, the court, sua sponte, raised additional concerns about M.F. As a result, the State moved to discharge M.F. The court held a hearing on the motion, and the State offered M.F.'s criminal record, which showed numerous convictions for driving under suspension, assaults, and other misdemeanor law violations. At a later hearing, the court received into evidence M.F.'s juror qualification form, which showed his answers concerning his criminal record were inaccurate.

In both *Turley* and *Harris*, the question of waiver was raised after the juries rendered their verdicts. However, in this matter, M.F. was discharged prior to the case being submitted to the jury. The issue of M.F.'s suitability was raised by the trial court itself. As a result, the issue of whether the State waived an objection to M.F.'s concealment of his criminal record need not be considered by us. We also need not consider the correctness of the Court of Appeals' analysis of the issue of waiver after

---

[19] *Id.*

[20] *Id.* at 862, 652 N.W.2d at 590.

the jury was sworn in. Instead, we conclude that under these facts and our jurisprudence, the district court had the discretion to discharge M.F.

### (b) Questioning of M.F.

[7] The fact that M.F. failed to disclose his criminal history does not per se justify his disqualification from the jury. "The motives for concealing information may vary, but only those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial."[21] In *Harris*, we declined to adopt an automatic presumed-bias rule when the juror concealed information. We upheld the discharge, however, because upon questioning, the juror admitted she had concealed information for the purpose of being placed on the jury.

In the instant case, there is no explanation in the record as to why M.F. provided inaccurate information on his jury questionnaire. This is at least in part because M.F. was never questioned on this matter.

The best practice in such a circumstance is to question the juror. In *State v. Myers*, a question of prejudice of the jurors in one case was presented because they had earlier sat as jurors in a related case.[22] We stated that if the court is informed

> of matters which might reasonably constitute grounds for a challenge for cause of one or more jurors, which grounds arose out of matters occurring after the jury was sworn, it is the duty of the court to hear evidence and examine the jurors and determine whether any juror might be subject to disqualification for cause. A failure to inquire under such circumstances constitutes such fundamental unfairness as to jeopardize the constitutional guaranty of the right to trial by an impartial jury. Any

---

[21] See *McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548, 556, 104 S. Ct. 845, 78 L. Ed. 2d 663 (1984).

[22] See *Myers, supra* note 5.

lowering of those constitutional standards strikes at the very heart of the jury system.[23]

[8] However, our jurisprudence shows that where a juror indicates that he or she is physically incapable of proceeding, such as in the case of the juror's illness or incapacity, examination of the juror before discharging him or her is not required and may not be feasible.[24]

In the instant case, the district court did conduct a hearing on the issue of whether M.F. should be disqualified and did receive evidence. It did not, however, question M.F. directly as to why he failed to disclose his criminal history. If M.F.'s failure to disclose his criminal record had been the sole basis for discharge, it would have been difficult for this court to review the trial court's decision to discharge M.F. However, because the record demonstrates there were various reasons for the discharge, we consider the lack of disclosure simply a factor in the overall exercise of the trial court's discretion.

### (c) M.F.'s Inattentiveness During Trial

[9] The district court also based its decision to discharge M.F. on his inattentiveness. Whether a juror paid attention to the trial in order to intelligently comprehend the proceeding is generally left to the discretion of the trial judge.[25] Here, the court noted on the record that it had been observing M.F. and was concerned he was not paying attention and seemed disinterested in the trial. It stated that M.F. had not taken any notes and compared his attention span to that of a third grade student.

---

[23] *Id.* at 472, 209 N.W.2d at 349. See, also, *State v. Robinson*, 198 Neb. 785, 255 N.W.2d 835 (1977).

[24] See *Hilding, supra* note 7.

[25] See *Braunie v. State*, 105 Neb. 355, 180 N.W. 567 (1920).

This court and other courts have upheld discharge based on similar grounds. In *State v. Robinson*,[26] the court gave a general admonishment to the entire jury after one juror appeared to have been sleeping during the proceedings. After the admonishment, the court noted, outside the presence of the jury, that the juror had again been sleeping during a witness' testimony. The court removed the juror and sat the alternate juror.

In *State v. Jorden*,[27] the Washington Court of Appeals found that removing a juror on the ground of inattentiveness during trial was not an abuse of the trial court's discretion. The record showed that no single incident led to the juror's discharge and that the trial court "documented the juror's stages of inattentiveness, ranging from having her eyes closed to an appearance of dozing."[28] The record also documented the specific trial testimony during which the juror was inattentive.

In *U.S. v. Canales*,[29] the Second Circuit discharged a juror for sleeping. The record demonstrated that "over the course of two days, the able district judge, his law clerk, government counsel, and [the defendant's] counsel all witnessed the discharged juror repeatedly closing his eyes, tilting his head backward during testimony, and otherwise giving signs of being asleep."[30]

In the matter before us, the record is not specific as to when and how M.F.'s inattentiveness occurred, aside from the observation that he took no notes. Greater specificity would aid the appellate court's review of the trial court's ruling. Nevertheless, the trial judge made it clear that he had significant concerns about whether M.F. was performing his duty as a juror, and we consider those findings as a factor in

---

[26] *State v. Robinson*, 272 Neb. 582, 724 N.W.2d 35 (2006).

[27] *State v. Jorden*, 103 Wash. App. 221, 11 P.3d 866 (2000).

[28] *Id.* at 226 n.5, 11 P.3d at 869 n.5.

[29] *U.S. v. Canales*, 459 Fed. Appx. 55 (2d Cir. 2012).

[30] *Id.* at 57.

determining whether the court abused its discretion in discharging M.F.

### (d) Totality of Circumstances

[10,11] A trial court's decision to remove a juror and substitute an alternate is reviewed for an abuse of discretion; the court's decision is an abuse of discretion if the decision results in bias or prejudice to the defendant, and prejudice includes the discharge of a juror without factual support or for a legally irrelevant reason.[31]

Based on the totality of the circumstances shown in the record, the district court did not abuse its discretion in discharging M.F. The record specifically shows: (1) M.F., upon his own volition and after being sworn as a juror, advised the court that he did not think he was suitable for jury service; (2) during trial, the court observed M.F. to be inattentive and uninterested; and (3) M.F. failed to disclose the true nature of his criminal record, which included multiple convictions for crimes other than traffic offenses. As a result, the district court did not abuse its discretion when it discharged M.F.

### 3. Huff's Motion to Declare Mistrial

Because the district court did not abuse its discretion in discharging M.F., it also did not abuse its discretion when it denied Huff's motion for mistrial based on the same events.

### V. CONCLUSION

Although our reasoning differs from that of the Court of Appeals, for the foregoing reasons, we conclude that the Court of Appeals did not err when it affirmed the judgment of the district court.

AFFIRMED.

WRIGHT, J., not participating in the decision.

---

[31] See, e.g., *U.S. v. Ebron*, 683 F.3d 105 (5th Cir. 2012); *U.S. v. De La Vega*, 913 F.2d 861 (11th Cir. 1990); *United States v. Fajardo*, 787 F.2d 1523 (11th Cir. 1986).